Sharett SMITH, by and through her next friend, Floyd Smith, Plaintiff,

v.

Holly BENSON, in her official capacity as Secretary of the Florida Agency for Health Care Administration, Defendant.

Case No.: 09–21543–CIV.

United States District Court, S.D. Florida.

Jan. 28, 2010.

Miriam E. Harmatz, Lead Counsel, Florida Legal Services Inc. Miami Advocacy Office, Jose Francisco Fons, Monica Vigues, Legal Services of Greater Miami, Miami, FL, for Plaintiff.

Justin M. Senior, Gainesville, FL, L. William Porter, II, Agency for Health Care Administration Office of General Counsel, Tallahassee, FL, for Defendant.

*ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; ISSUING DECLARATORY JUDGMENT AND PERMANENT INJUNCTION; CLOSING CASE*

ALAN S. GOLD, District Judge.

This CAUSE is before the Court on Plaintiff's Motion for Summary Judgment **[DE 26]**. Plaintiff Sharett Smith, incontinent due to cerebral palsy, brought suit against Defendant the Secretary of the Florida Agency for Health Care Administration (AHCA),[1] pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief. Plaintiff alleges that the federal Medicaid Act, 42 U.S.C. § 1396, *et seq.* ("The Medicaid Act or the Act"), requires the State of Florida to provide her with incontinence supplies as prescribed by her treating physician. The parties are in agreement that this case rests on an issue of law appropriate for resolution on summary judgment. Oral argument was initially heard on October 23, 2009, and I heard re-argument on January 22, 2010. For the reasons set forth below, I grant Plaintiff's Motion for Summary Judgment **[DE 26]** and issue the declaratory and injunctive relief requested.

## I. FACTUAL BACKGROUND [2]

Sharett Smith ("Plaintiff") is a seventeen-year old Medicaid recipient with se-

---

1. The Agency for Health Care Administration (AHCA) is the Florida agency charged with the duty of administering the federal Medicaid program. [DE 81, ¶ 6].

2. According to Southern District of Florida Local Rule 7.5, a party moving for summary judgment must submit a statement of undisputed facts. If necessary, the non-moving party also may file a statement of material facts as to which it contends a genuine factual issue exists. *See.* S.D. Fla. L.R. 7.5. The parties must support their disputed and un-disputed facts by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits filed with the Court. *Id.* All facts set forth in the movant's statement that are supported by record evidence are deemed admitted unless controverted by the non-moving party. *Id.* Neither party originally disputed the other's Statement of Material Facts. Therefore, I could have deemed both Statements admitted for summary judgment purposes. *See* Fla. L.R. 7.5(D). Instead, at oral argument on October 23, 2009, the parties agreed, and I ordered, a

vere disabilities, including mental retardation and cerebral palsy.[3] [DE 81, ¶¶ 1, 7; DE 53–1 ¶ 2; Ofir Decl. ¶¶ 5–7.] Cerebral palsy is a disorder that affects the development of motor areas in the brain and disrupts the brain's ability to adequately control movement and posture. [Ofir Decl. ¶ 5]. Because of her severe disabilities, Plaintiff is non-verbal and incontinent, incontinent meaning Plaintiff cannot control bladder or bowel movements. [DE 81, ¶ 9; Ofir Decl. ¶ 7–8.] Incontinence is a common complication of cerebral palsy which interferes with muscular function and sensations that trigger bowel control. [DE 81, ¶ 10; Ofir Decl. ¶ 9.]

Dr. Audrey Ofir—Assistant Professor of Clinical Pediatrics at the University of Miami Miller School of Medicine; Board Certified in Pediatrics; and Director of the Continuity Clinic for the Pediatric Residency Program at Jackson Memorial Hospital—has treated Plaintiff "since shortly after her birth". [*See* DE 26–4; Ofir Decl. ¶¶ 1–4.] In November 2008, Dr. Ofir wrote Plaintiff a prescription for incontinence diapers to ameliorate her condition "physically, mentally and socially." [*Id.* at ¶¶ 10–15.] Dr. Ofir testified that "diapers are medically necessary for [Plaintiff] since they draw moisture from [Plaintiff's] skin and prevent skin irritation, rashes, skin breakdown, and infec-

tions which can result without adequate incontinence supplies." [Ofir Decl. ¶ 10.][4] Dr. Ofir further testified that, as an aggravating factor, Plaintiff is "nonverbal," and, consequently, she cannot "tell her caretaker that she is sitting in soiled clothes or diapers or report any incipient rash or infection." [Ofir Decl. ¶ 11; *see also* Floyd Smith Decl. ¶ 6 ("She can make some sounds but does not use words.").] Moreover, according to Dr. Ofir, without diapers, Plaintiff could not engage in public activities such as general socializing and attending school and church activities. [*Id.* at ¶ 12 (diapers "allow [Plaintiff] to engage in necessary life activities such as socializing with others, attending school and participating in public events with her family"); *see also* Floyd Smith Decl. ¶ 7 ("If left on her own, [Plaintiff] would spend hours playing with one stuffed toy. But, I want [her] to be around other people as much as she can."); *Id.* at ¶ 9 ("Without diapers, I would not be able to take her to [ ] public activities.").] Finally, Dr. Ofir concluded that a situation in which Plaintiff constantly soiled and changed her clothes at school or elsewhere would harm her physical and mental health, [Ofir Decl. at ¶ 13 ("It would be detrimental to both [Plaintiff's] physical and mental health to wet and soil her clothes and then require changing her

---

period of thirty (30) days additional discovery to permit them to contest, if warranted, the other party's Statement of Material Facts. [*See* DE 45 (Oct. 23, 2009 Transcript of Oral Argument) at 19: 7–15.] As explained below, that discovery failed to yield anything in the way of conflicting evidence.

3. Plaintiff relies on Medicaid to cover her medical needs; she has no private insurance or Medicare. [Smith Decl. ¶ 3.]

4. In Defendant's response to Plaintiff's statement of undisputed facts, Defendant argues that whether incontinence supplies are *medically necessary* for Plaintiff is a material and disputed fact. However, as explained below,

Defendant's assertion that incontinence supplies are not medically necessary for Plaintiff finds no support in the record, and thus, must be disregarded. *See Baker v. Moskau,* 335 Fed.Appx. 864 (11th Cir.2009) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is ... contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (emphasis in original).

clothes at school or other activities."); DE 82, ¶ 26.]

Upon receiving a prescription, Plaintiff's father, Floyd Smith, attempted to fill it at two Medicaid Durable Medical Equipment / Medical Supply providers. [Floyd Smith Decl. ¶¶ 12–13; Floyd Smith Depo. Tr. P. 24:11.] Representatives at both entities informed him—without any written documentation, such as a denial notice—that Medicaid does not cover diapers. [*Id.*][5] The representatives were following prescribed rules. [*See* Lichtenstein Decl. ¶¶ 9–10.] Florida Administrative Code Rule 59G–4.070 governs Medicaid coverage of durable medical equipment and medical supplies in Florida, and that Rule incorporates Florida's Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook (Limitations Handbook). [DE 82, ¶ 29.] Medicaid providers look to the Limitations Handbook to determine *both* policies and procedures concerning reimbursement for covered services *and* items that Medicaid does not cover. [*Id.* at ¶ 30.] Limitations Handbook Rule 2–96 excludes Medicaid reimbursement for diapers and incontinence supplies of any kind, with no exceptions, even for recipients under the age of 21. [DE 53–1 (Stipulated Facts), ¶ 4.][6] Several days after filing this law suit, Plaintiff received a temporary supply of diapers from the Florida Agency for Persons with Disabilities (APD). [Floyd Smith Decl. ¶ 15].[7]

**5.** In Defendant's Third Amended Response to Plaintiff's Revised Statement of Facts [DE 82], Defendant appears to argue that Plaintiff's counsel misled Defendant into believing that there were only two durable medical supply providers reference in the pleadings and the record, and that Bob Lichtenstein ("Lichtenstein") was one of them [DE 82 ¶ 28]. In fact, Plaintiff, in her Initial Disclosures, identified and described Lichtenstein as a "Florida durable medical equipment and medical supply provider with knowledge as to how prescribed services and equipment are provided to Medicaid recipients in Florida." [DE 84, Ex. B.] The fact that Defendant erroneously assumed that Lichtenstein was one of the two providers contacted by Smith, and thus, only deposed him, cannot be used to raise a genuine issue of material fact on summary judgment. Accordingly, Floyd Smith's testimony that he took the November 2008 prescription to two medical supply providers who told him that Medicaid would not honor the prescription [Floyd Smith Decl. ¶ 12; DE 65–4 at 24; 4–11], remains uncontroverted for summary judgment purposes.

**6.** Despite having stipulated that the Agency's challenged rule excludes coverage of diapers and incontinence briefs of any kind [DE 53–1], Defendant now disputes that fact by pointing to, among other things, a variety of state programs and implying that these programs will provide incontinence supplies for Plaintiff. [See e.g. DE 82 at ¶ 31]. For example, Defendant argues that the challenged rule does not *per se* exclude coverage of diapers because Plaintiff can get diapers if she is institutionalized through several "Home and Community Based" waiver programs available to qualified Florida Medicaid recipients. [*See* Williams Decl. ¶ 4.]. However, Defendant fails to note that none of these programs currently apply to Plaintiff, and as such cannot be cited to raise a genuine issue of material fact on summary judgment. Moreover, Defendant's assertion that "[i]t would take quite a series of events for someone to completely fall through the cracks in Florida and simply suffer, diaperless, for any significant period of time," is clearly insufficient to controvert the stipulation that the agency's challenged rule excludes Medicaid reimbursement for diapers and incontinence briefs of any kind. [DE 82 at ¶ 31].

**7.** Defendant attempts to raise a genuine issue of fact concerning Plaintiff's temporary supply of diapers from APD by alleging that Plaintiff "knows [she] has been given a permanent supply of diapers" because APD "made the current arrangement and advised [Floyd Smith] that he would be resupplied." [DE 81, ¶ 37] In support of this argument, Defendant points to the deposition testimony of Floyd Smith. However, Defendant's assertion is unsupported by the record as Floyd Smith never testified that he has been provided a permanent supply of diapers, and Defendant has failed to put forth any evidence indicating as such. [*See* Floyd Smith Depo.

Plaintiff brought suit on June 8, 2009, alleging that "Defendant's policies and procedures for administering home health services [ ] violate the [Early and Periodic Screening, Diagnosis and Treatment (EPSDT)] provisions" of the federal Medicaid statute, "[which] entitles Plaintiff to relief under 42 U.S.C. § 1983." (Am. Compl. at ¶ 32). Specifically, Plaintiff alleges that Limitations Handbook Rule 2–96—which excludes diapers and incontinence briefs from reimbursement by Florida Medicaid, even for recipients under the age of 21—conflicts with the EPSDT program, and thus federal law preempts that rule pursuant to the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl. 2. (*Id.* at ¶ 33). Accordingly, Plaintiff seeks declaratory and injunctive relief.

## II. JURISDICTION & STANDARD OF REVIEW

This Court has original jurisdiction over the federal claims presented here, 28 U.S.C. § 1331, and further has original jurisdiction under 28 U.S.C. § 1343(a)(3–4), because Plaintiff seeks to redress an alleged state law deprivation of a purported right secured by an act of Congress.

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Bishop v. Birmingham Police Dep't,* 361 F.3d 607, 609 (11th Cir.2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney,* 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

Tr. 27:8–15]. Moreover, it bears mentioning that it is undisputed that APD has no legal obligation to provide coverage for medically necessary diapers for incontinent Medicaid recipients who are not in any of the Developmental Disabilities Home and Community-

Based Services Waiver programs, which are administered by APD. [DE 81, ¶ 38–9]. Plaintiff is currently on the waiting list for one such program along with over 17,000 other eligible individuals. *Id.*

judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

■ On this motion for summary judgment, Plaintiff seeks both declaratory and injunctive relief. The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), provides that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Eleventh Circuit has held that in actions brought under the DJA, "the threshold question is whether a justiciable controversy exists." *Cummings v. State Farm Mut. Auto. Ins. Co.*, 323 Fed. Appx. 847 (11th Cir.2009) (citing *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409, 414 (11th Cir.1995)) (citations omitted). In declaratory judgment actions, to show a justiciable controversy, the party invoking federal jurisdiction must allege facts showing:

> at an irreducible minimum, that at the time the complaint was filed, he has suffered some *actual or threatened injury* resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition.

*Id.* (internal quotation marks and citation omitted). In this case, Plaintiff alleges that Defendant is engaged in an ongoing violation of federal Medicaid law by depriving her of diapers prescribed as medically necessary to ameliorate her severe disabilities. (Am. Compl. ¶¶ 3–4). Accordingly, Plaintiff has met her burden and is entitled to declaratory relief.

■ Moreover, to obtain a permanent injunction, a party must show: (1) success on the merits of the party's legal claim; (2) that no adequate remedy at law exists; and (3) that irreparable harm will result if the court does not grant injunctive relief.

See *U.S. v. Kaplowitz*, 201 Fed.Appx. 659, 661 (11th Cir.2006) (citing *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir.2005)); *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir.2003). I will address each of these elements in turn.

## III. DISCUSSION

The parties concur, and I agree, that no Eleventh Circuit precedent directly addresses the question presented here. Plaintiff's Motion for Summary Judgment instead relies heavily on a Fifth Circuit case directly on point, *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir.2004), which Plaintiff asks this Court to follow. Before accepting that invitation, however, I first examine the relevant provisions of the Medicaid Act, Eleventh Circuit precedent on similar Medicaid issues, and the *Dickson* opinion itself.

### A. Success on the Merits

### 1. The Federal Medicaid EPSDT Program

■ Medicaid is a jointly funded federal-state medical assistance program for low income and disabled persons. 42 U.S.C. §§ 1396–1396v. While a state's participation in the Medicaid program is voluntary, once a state chooses to participate—as Florida has done—it must comply with Federal Medicaid law. See, e.g., *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

Federal Medicaid law requires participating states to provide a range of mandatory medical services to Medicaid recipients. 42 U.S.C. § 1396a *et seq.* Among the mandatory medical services required is the early and periodic screening, diagnosis and treatment ("EPSDT") program for Medicaid-eligible children under the age of 21.[8] 42 U.S.C. §§ 1396a(a)(43),

---

8. The EPSDT program was crafted with the

intent that it be "the nation's largest preven-

1396d(a)(4)(B).[9] The scope of EPSDT services is defined at 42 U.S.C. § 1396d(r)(5).[10] In particular, § 1396d(r)(5) provides that EPSDT services are mandated if those services are a type of "medical assistance," [11] as defined in § 1396d(a), that is "necessary ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, *whether or not such services are covered under the State plan.*" 42 U.S.C. § 1396d(r)(5) (emphasis added). Thus, even if a particular service or treatment is an "optional benefit" and not included the State's Medicaid plan for adults, the state must nevertheless provide, under the EPSDT program: (1) any medical assistance that a state is permitted to cover under § 1396d(a) of the Medicaid Act; (2) necessary to "correct or ameliorate" the child's condition. Indeed,

every Circuit which has examined the scope of the EPSDT program has recognized that states *must* cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a). *See Ekloff v. Rodgers,* 443 F.Supp.2d 1173, 1179 (D.Ariz.2006) (collecting cases); *see also Pittman by Pope v. Sec'y, Fla. Dep't of Health & Rehab.,* 998 F.2d 887, 892 (11th Cir.1993) (1989 amendment adding § 1396d(r)(5) took away any discretion to state might have led to exclude organ transplants from the treatment available to individuals under twenty-one).

In addition to the language of the statute and its legislative history, the federal agency responsible for administering the Medicaid program, the Center for Medicare and Medicaid Services ("CMS"), has made the broad mandate of the EPSDT

tive health program for children." H.R. 3299, 101st Cong. § 4213 (1989). In 1989 Congress amended the EPSDT program through the Omnibus Budget Reconciliation Act of 1989. The most noteworthy aspects of the *1989 EPSDT reforms were twofold:* (1) Congress obligated participating states to provide a comprehensive package of preventive services that met reasonable standards of medical necessity (42 U.S.C. §§ 1396a(a)(43), 1396d(r)); and (2) Congress expanded EPSDT services to include "[s]uch other necessary health care, diagnostic services, treatment, and other measures described [as medical assistance] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.* In sum, these amendments require states to provide Medicaid coverage for any service "identified as medically necessary through the EPSDT program." 135 Cong. Rec. S.6899, daily ed. June 19, 1989.

9. Specifically, this provision requires coverage of "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21[.]" 42 U.S.C. § 1396d(a)(4)(B).

10. In relevant part, § 1396d(r)(5) states as follows: "(r) ... The term 'early and periodic screening, diagnostic, and treatment services' means the following items and services: 5. Such other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a) ] [ ] to correct or ameliorate defects and physical or mental illnesses and conditions discovered by the screening services, *whether or not such services are covered by the State plan.*" 42 U.S.C. § 1396d(r)(5) (emphasis added).

11. The term "medical assistance" in 42 U.S.C. § 1396d(a) means "payment of part or all of the cost of following care and services," such as **"home health care,"** "prescribed drugs, dentures, and prosthetic devices," and "other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician ... within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level...." 42 U.S.C. § 1396d(a) at subsections (a)(7), (a)(12), and (a)(13) (emphasis added). As explained below, in this case the relevant category of medical assistance is "home health care."

program abundantly clear. According to CMS "... the Act requires that any service which you [the state] are permitted to cover under Medicaid that is necessary to treat or ameliorate a ... condition identified by a screen, must be provided to EPSDT participants regardless of whether the service or item is otherwise included in your Medicaid plan." CMS State Medicaid Manual ("SMM") § 5110 (1990). "Thus, according to CMS the law requires the provision of the services needed by EPSDT clients if the services can be covered under the Medicaid program." *Dickson*, 391 F.3d at 591. Moreover, "under the CMS interpretation, a state Medicaid agency may regulate the amount, duration and scope of medical assistance provided, but its regulation must comply with the statutory requirement that all health care and services described in § 1396d(a) that are necessary to the corrective and ameliorative purposes of the EPSDT program must be provided."[12] *Id.* (citing SMM § 5122).

## 2. Eleventh Circuit Precedent Interpreting Medicaid Act

■ Although the Eleventh Circuit has not decided the precise issue here, it previously has interpreted related provisions of the Medicaid Act. We therefore know the following: Because Florida participates in the Medicaid Program, it must comply with the Medicaid Act and corresponding regulations. *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Serv.*, 225 F.3d 1208, 1216 n. 5 (11th Cir.2000) ("Because Defendants and the State of Florida participate in the Medicaid Program ... they are obligated to comply with the requirements of the Medicaid Act and corresponding regulations."). One such requirement is that, pursuant to § 1396d(r)(5) of the Medicaid Act, participating States such as Florida, *must* "provide necessary treatment to correct or ameliorate defects and physical ... illnesses and conditions discovered by [EPSDT services], *whether or not such services are covered under the State plan*". *Pittman By Pope v. Sec'y, Fla. DHRS*, 998 F.2d 887, 892 (11th Cir.1993) (internal quotations omitted); *see also id.* at 889 ("The language of [42 U.S.C. 1396d(r)(5) ] appears to mandate coverage for all medically necessary treatment for eligible recipients under age twenty-one."). The Eleventh Circuit further has held that individuals "have a federal right to reasonably prompt provision of assistance under section 1396a(a)(8)[13] of the Medicaid Act, and that this right is enforceable under section 1983." *Doe 1–13 By & Through Doe Sr. 1–13 v. Chiles*, 136 F.3d 709, 719 (11th Cir.1998).

■ Moreover, the Eleventh Circuit has noted that budgetary constraints, standing alone, cannot relieve Florida of its obligations under the Medicaid Act. *See Tallahassee Mem'l. Reg'l. Med. Ctr. v. Cook*, 109 F.3d 693, 704 (11th Cir.1997) ("While budgetary constraints may be a factor to be considered by a state when amending a current [Medicaid] plan, implementing a new plan, or making the annually mandated findings, budgetary constraints alone can never be sufficient ...

---

**12.** SMM § 5122, in pertinent part, provides: "42 CFR 440.230 allows you to establish the amount, duration and scope of services provided under the EPSDT benefit. Any limitations imposed must be reasonable and services must be sufficient to meet their purpose [within the context of serving the needs of individuals under twenty-one]. You may define the service as long as the definition comports with the requirements of the statute in that all services included in [§ 1396d(a) ] that are medically necessary to ameliorate or correct defects and physical or mental illnesses and conditions discovered by the screening services are provided."

**13.** The corresponding provision at issue here is § 1396a(a)(10).

[to] evade the requirements of the Medicaid Act...."). Finally, the Eleventh Circuit has stated that despite the mandate that "[a] state must fund any medically necessary treatment that [a qualifying individual under 21] requires, it does not follow that [a] state is wholly excluded from the process of determining what treatment is necessary." *Moore v. Meadows*, 324 Fed.Appx. 773, 774 (11th Cir. 2009). Instead, both the state and the treating physician "have roles in determining what *medical measures are necessary* to correct or ameliorate [the] medical. condition" of a qualifying individual under 21. *Id.* ("A private physician's word on medical necessity is not dispositive."); *see also Rush v. Parham*, 625 F.2d 1150, 1155–56 (5th Cir.1980) (a state may adopt a definition of medical necessity that places reasonable limits on a physician's discretion in determining what services are appropriate in a particular medicaid case, although this does not remove from the private physician the primary responsibility of determining what treatment should be made available to his patients).[14]

### 3. *Dickson Holding*

The Plaintiff in *Dickson* brought suit under 42 U.S.C. § 1983 alleging that Louisiana's Medicaid agency deprived him of a federal statutory right to medical assistance under the Medicaid Act, 42 U.S.C. § 1396, *et. seq. S.D. Ex Rel. Dickson v. Hood*, 391 F.3d 581, 584 (5th Cir.2004). The Fifth Circuit addressed two issues of law:

(1) whether [the Louisiana] state Medicaid agency[ ] unlawfully denied the recipient's claim under the Medicaid Act's program for 'early and periodic screening, diagnostic, and treatment services' (EPSDT) by refusing to pay for his

medically prescribed disposable incontinence underwear that is necessary to ameliorate his physical and mental conditions caused by spina bifida, which results in his total bowel and bladder incontinence, loss of sensation, and continual risk of infection; and if so, (2) whether [the agency's] violation of the statute deprived the recipient of a right secured by federal statute for which he may bring an action for redress under 42 U.S.C. § 1983.

*Id.*

As to the first question, the Fifth Circuit reasoned that the language of the applicable statutory provisions required an affirmative answer.

Section 1396d(a)(4)(B) provides that 'medical assistance' means payment of part or all of the cost of the following care and services for individuals: 'early and periodic screening, diagnostic, and treatment [EPSDT] services' (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of twenty-one[.] Section 1396d(r), in pertinent part, provides that the term 'early and periodic screening, diagnostic, and treatment services' means the following items and services: ... (5) **Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.** 42 U.S.C. § 1396d(r)(5).

*id.* at 588 (emphasis added). Applying the plain words of the statute and following a thorough review of its legislative history, the Fifth Circuit concluded that "a state

---

**14.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions predating September 30, 1981.

Medicaid agency must provide, under the EPSDT program, (1) any medical assistance that a state is permitted to cover under § 1396(a) of the Medicaid Act, that is (2) necessary to correct or ameliorate defects and physical and mental illnesses and conditions discovered by screening." *Id.* at 593; *see also id.* at 589 (Pursuant to the plain words of the statute, "[t]he medical assistance made available to EPSDT children must be for the health care described in the list of twenty-seven categories set forth in s 1396d(a)—modified by the requirement that it must be necessary for corrective or ameliorative EPSDT purposes—further modified by the statutory mandate that it must be provided whether or not it is covered under the state plan.").

Moreover, because "incontinence supplies or diapers" are not expressly referenced in the Medicaid statute under the list of twenty-seven categories of medical assistance set forth in § 1396d(a) of the Medicaid Act, the Fifth Circuit next addressed whether the Act specifically mandates coverage of incontinence supplies for qualifying individuals under 21. In this regard, the *Dickson* Court stated as follows:

> CMS has promulgated a regulation, codified as 42 CFR § 440.70, which pro-

vides, in pertinent parts, that "[h]ome health services [an expressly listed category of medical assistance in § 1369d(a) of the Medicaid Act] include ... [m]edical supplies, equipment, and appliances suitable for use in the home ... [when provided to a recipient at] his place of residence...." Further, 42 CFR § 441.15, in relevant part, provides: "With respect to the services defined in § 440.70 ... a State plan must provide that-(a) Home health services include, as a minimum....(3) Medical supplies, equipment, and appliances." In light of the well settled principles reaffirmed by *Chevron,*[15] we conclude that the agency's interpretation of "home health care services" as including "medical supplies," when used under the circumstances specified in its regulation, is clearly a permissible statutory construction ... Giving effect to the natural and plain meaning of the term "medical supplies" in the context of this case, we find that such medical supplies reasonably include the incontinence supplies medically prescribed for [Plaintiff].

*Id.* at 594.[16] Thus, the Fifth Circuit held that "incontinence supplies are described in the medical assistance category of 'home

---

**15.** Citing *Chevron,* the Fifth Circuit noted that "[w]hen a court reviews an agency's construction of the statute which it administers[, and determines] that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction." *See Dickson,* 391 F.3d at 594 (*citing Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

**16.** Although not citing *Dickson,* the Sixth Circuit has considered whether the Department of Health & Human Services (HHS) reasonably interpreted "medical devices" as used in the Medicaid statutes to include incontinence products. The Court held such an interpretation is entitled to *Chevron* deference. *See Harris v. Olszewski,* 442 F.3d 456, 466 (6th Cir.2006) ("... the ordinary and natural meaning of medical devices extends to incontinence products") (internal citations and quotations omitted); *id.* at 467 ("... at least one of the natural meanings of medical devices includes incontinence products, and the agency's interpretation therefore represents a permissible one entitled to deference" (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))).

health care services' and, therefore, must be provided to EPSDT eligible children if necessary to correct or ameliorate a condition discovered by screening."[17] *Id.*

■ Finally, the *Dickson* Court addressed whether the plaintiff could enforce a right under the Medicaid Act to receive incontinence underwear pursuant to the EPSDT program by bringing suit under § 1983. The Fifth Circuit applied the three factors reiterated by the Supreme Court in *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), to determine whether a particular federal statute gives rise to a right enforceable by § 1983: "(1) whether Congress intended for the provisions to benefit the plaintiff; (2) whether the plaintiff can show that the right in question is not so 'vague and amorphous' that its enforcement would 'strain judicial competence'; and (3) whether the statute unambiguously imposes a binding obligation on the states." *Dickson,* 391 F.3d at 602; *see also Collier v. Dickinson,* 477 F.3d 1306, 1310 (11th Cir.2007). The *Dickson* Court held that these conditions were satisfied for several reasons. First, the Court concluded that "because it is undisputed that the plaintiff is an eligible recipient of EPSDT services ... [and] the [Medicaid Act] evidences a congressional intent to confer a right to the health care, services,

treatments and other measures described in § 1396d(a), when necessary for EPSDT ameliorative purposes," the first *Blessing* factor was satisfied. *Id.* at 604. Turning to the second *Blessing* factor, the *Dickson* Court concluded that "the right asserted by [plaintiff] is not so Vague and amorphous' that its enforcement would 'strain judicial competence'" because the level of statutory analysis conducted by the Court in *Dickson* was the "sort of work in which courts engage every day." *Id.* at 605. Finally, the Fifth Circuit held that plaintiff easily satisfied the third *Blessing* factor because the Medicaid statute "unambiguously imposes EPSDT obligations on the participating states." *Id.*

**4. I Adopt and Apply *Dickson* to the Facts Here**

■ Having reviewed Eleventh Circuit precedent interpreting the Medicaid Act, and the *Dickson* opinion itself, I conclude that the Eleventh Circuit, if presented the opportunity, likely would adopt and apply *Dickson* to the facts at issue here. Indeed, consistent with *Dickson* the Eleventh Circuit has already held that "[t]he language of [§ 1396d(r)(5)] appears to mandate coverage for all medically necessary treatment for eligible recipients under age twenty-one." *Pittman,* 998 F.2d at 889 (11th Cir.1993).[18] Thus, under

---

17. In *Dickson,* the Defendant did not challenge the necessity of diapers to ameliorate the adverse effects of plaintiff's incontinence on appeal. However, because Defendant raises that argument in this case, I will address this argument below.

18. The Eleventh Circuit in *Pittman* expressly rejected the State's argument that it had discretion to deny coverage for medically necessary treatment under the EPSDT program. The Court stated:

The language of § 1396d(r)(5) expressly requires Medicaid participating states to provide necessary treatment "to correct or ameliorate defects and physical ... illnesses and conditions discovered by the

screening services, whether or not such services are covered under the State plan." 42 U.S.C.A. § 1396d(r)(5) (West 1992 & Supp.1993) (emphasis added). Thus, even if § 1396b(i)(1) were construed to give Florida discretion not to provide funding of organ transplants, the 1989 amendment adding § 1396d(r)(5) took it away for individuals under the age of twenty-one who are otherwise qualified under the state plan. Florida may not elect, therefore, not to pay for a liver-bowel transplant and incidental medical treatment for Lexen Pittman, a qualified Medicaid recipient under age twenty-one.

*Pittman,* 998 F.2d at 891–92 (emphasis in original).

Eleventh Circuit precedent, the state has no discretion to deny funding of medically necessary treatment under the EPSDT provisions. *See Id.* at 892.

■ Moreover, citing *Rush v. Parham,* 625 F.2d 1150, 1155 (5th Cir.1980),[19] the Eleventh Circuit recently held that Florida may participate "in determining what medical measures are necessary to "correct or ameliorate" a medical condition."[20] *See Moore,* 324 Fed.Appx. at 774. Specifically, the Court stated that "[w]hile it is true that, after the 1989 amendments to the Medicaid Act, the state must fund any medically necessary treatment that [plaintiff] requires, 0, it does not follow that the state is wholly excluded from the process of determining what treatment is necessary." *Id.* In this regard, the Fifth Circuit in *Rush* explained:

> "This does not remove from the private physician the primary responsibility of determining what treatment should be made available to his patients. We hold only that the physician is required to operate within such reasonable limitations as the state may impose. This same relationship between the private physician and government exists in the federal Medicare program, which, like Medicaid, is centered around the judgment of the private physician. *See* 42 U.S.C. s 1396a(a)(23) (1976) . . . ."

*Rush v. Parham,* 625 F.2d 1150, 1157. As explained below, regardless of the level of deference afforded to a state's regulation of the Medicaid program, in this case the State of Florida has elected to implement policy by writing a rule that under all circumstances refuses to provide incontinence supplies deemed necessary by a treating physician. In other words, Florida has not merely participated in determining what treatment is necessary; rather, Florida's policy constitutes a blanket denial of a right secured by the EPSDT program of the Medicaid Act and enforceable under § 1983.[21] In light of the foregoing precedent, and the facts of this case, I conclude that the Eleventh Circuit would likely follow the Fifth Circuit's reasoning in *Dickson.* Accordingly, I now adopt the *Dickson* Court's well-reasoned analysis and apply it to the facts at hand.

■ As described above, "a state Medicaid agency must provide, under the EPSDT program, (1) any medical assistance that a state is permitted to cover under § 1396(a) of the Medicaid Act, that is (2) necessary to correct or ameliorate defects and physical and mental illnesses and conditions discovered by screening." *Dickson,* 391 F.3d at 593. Moreover, "incontinence supplies are described in the medical assistance category of 'home health care services' and, therefore, must be provided to EPSDT eligible children if necessary to correct or ameliorate a condition discovered by screening." *Id.* at 594.

Florida's rule concerning Medicaid coverage of durable medical equipment and medical supplies is codified at Fla. Admin. Code R. 59G–4.070, which incorporates by reference the Florida Medicaid Durable Medical Equipment & Medical Supplies

---

**19.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions predating September 30, 1981.

**20.** It bears mentioning that the opinion in *Rush* predated the 1989 Amendment to the Medicaid Act which added § 1396d(r)(5) to the Act.

**21.** The Court in *Pittman* also assumed, without deciding, that the Medicaid Act confers upon eligible children a federal right to EPSDT benefits enforceable under § 1983. *See Pittman,* 998 F.2d 887 (Plaintiff brought suit under 42 U.S.C. § 1983).

Coverage & Limitations Handbook (Limitations Handbook).[22] Rule 2–96 of the Limitations Handbook ("the Rule") lists both the equipment and supplies covered *and* excluded by the State's Medicaid plan. Plaintiff Exh. G.[23] Listed under the "Non–Covered Services and Exclusions" appear "[d]iapers and incontinence briefs of any kind".[24] *Id.* The Rule permits no exception for EPSDT recipients under the age of 21. Indeed, the only reference to any exceptions to the Rule includes the following language: " . . . some of these items may be reimbursed through other Medicaid Programs, such as the Medicaid State Plan, Home and Community–Based Waiver Programs, or other state-operated programs."[25] *Id.* Medicaid providers closely follow the Limitations Handbook, including the Rule because Florida's Medicaid Agency will not reimburse items excluded by the Rule. *See* Plaintiffs. Exh. F.

Applying the *Dickson* holdings, it is clear that Florida, as a medicaid participating state, has failed to comply with the EPSDT mandate that states provide services described in § 1396(a) that are necessary for ameliorative purposes. *See* § 1396d(r)(5). Put another way, because incontinence supplies are described in the medical assistance category of "home health care services," they must be provided to EPSDT eligible children if necessary to correct or ameliorate a condition discovered by screening, whether or not such services are covered under the State plan. *See* § 1396d(a) & 1396d(r)(5). Accordingly, while the Rule's exclusion of "diapers and incontinence briefs of any kind" may be a proper limitation on the scope of home health care services as they apply to recipients over 21 years of age, to the extent that the exclusion applies to EPSDT benefits without an appropriate exception, the Rule is in violation of the Medicaid Act.[26]

**22.** http://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/ HANDBOOKS/CL_08_080701_DME_ver1.1.pdf.

**23.** By Plaintiff's Exh. . . . , I mean those Exhibits that Plaintiff attached to her Statement of Undisputed Material Facts In Support of Motion for Summary Judgment [DE 65–2].

**24.** As stated above, in this case, the parties have stipulated that the challenged rule denies coverage of diapers and incontinence briefs of all kinds. [*See* DE 53–1].

**25.** In this case, it is undisputed that none of these programs apply to Plaintiff. [*See* DE 84, p. 4; DE 82 ¶ 39–41.]

**26.** In Defendant's supplemental filings [*See* DE 82], Defendant argues that Florida has complied with federal Medicaid law because Florida's Medicaid plan allows the Agency to make exceptions to its uncovered medical supply list. In response, Plaintiff argues that Defendant's reference to an exception process does not cure the Defendant's rule and does not constitute a disputed material fact. In support of this position, Plaintiff argues that even assuming somewhere in the state plan an exception process is defined, such a process is undisputably unknown and inaccessi-

ble to providers. Indeed, Lichtenstein, a Medicaid provider, testified that "if the prescribed item is listed among those items that are 'Non–Covered Items,' the DME/Medical Supply [provider] cannot provide the item to the recipient," and that "[t]here are no provisions for exceptions or prior authorization for those items in the 'Non–Covered Services and Exclusions' section of the Handbook. . . ." [*See* DE 65–6, ¶¶ 5–9]. Moreover, it is undisputed that Medicaid providers closely follow the Limitations Handbook, including the Rule because Florida's Medicaid Agency will not reimburse items excluded by the Rule. *Id.* At oral argument on January 22, 2010, the Court inquired: " . . . but if you are in agreement that her doctor says [diapers are] medically necessary, you don't have any authority of your own by another doctor to contest that and you agree that the diapers ameliorate her problem . . . with all this evidence before you: why are you here? [*See* Tr. 1/22/10 p. 16:4]. In response, Defendant answered the following: "to defend our exception process." [Tr. 1/22/10 p. 16:14] Nevertheless, it is clear that in this case any such exception process is illusory. [*See* DE 65–10, p. 5 ("There is no [Florida] Medicaid State Plan funding for beneficiaries who medically require dia-

Next, I turn to the question of whether the federal Medicaid Act requires Florida to provide Plaintiff with incontinence supplies. That is, whether Plaintiff satisfies the EPSDT—necessary to correct or ameliorate a condition—criteria.[27] Dr. Ofir, Plaintiff's treating physician since birth, determined that diapers would ameliorate Plaintiff's physical conditions caused by her severe disabilities. [Ofir Decl. ¶¶ 8–14.];[28] *see generally, Ekloff,* 443 F.Supp.2d at 1180–81 (defining the phrase "correct or ameliorate" as including incontinence briefs because they are meant to make the [child's] condition better or more tolerable and holding that the phrase "to correct or ameliorate" within the EPSDT provision is meant to include incontinence briefs for preventive purposes). Specifically, Dr. Ofir, testified that she prescribed diapers to Plaintiff "as medically necessary" because they "draw moisture from the skin and prevent skin irritation, rashes, skin breakdown, and infections"; because diapers permit Plaintiff to engage in social activities; and because attempting to function without diapers "would be detri-

mental to both [Plaintiffs] physical and mental health." [Ofir Decl. ¶¶ 10–15.]

Notwithstanding Dr. Ofir's uncontroverted testimony,[29] in attempt to raise a genuine issue of fact as to whether Plaintiff "needs" incontinence diapers, Defendant argues that in her testimony Dr. Ofir was "unclear on what was actually medically necessary and what was simply a matter of convenience for the family." [DE 82 at 8, ¶ 24.] However, this assertion is unsupported by the record; on two occasions, Defendant asked Dr. Ofir whether diapers were a necessity for Plaintiff and Dr. Ofir clearly answered in the affirmative. [*See* DE 69, Ofir Depo. Tr., pp. 20:18–25, 26: 14–16.] Moreover, Defendant's assertion that incontinence supplies are only one way to accomplish preventing infections which can result without adequate incontinence supplies, is insufficient to raise a genuine issue of fact concerning medical necessity. [*See* DE 82, ¶ 19]. As such, despite Defendant's arguments to the contrary, Dr. Ofir's prescription and opinion that incontinence diapers are medically necessary to ameliorate Plaintiff's condition finds support in the record and is uncontroverted.[30]

---

pers."); *see also* DE 72–3, p. 2 (In response to Plaintiffs request for production of all documents relating to the number of exceptions requested on behalf of Medicaid recipients under age 21 for coverage of incontinence supplies Defendant answered "no documents exist.") ].

**27.** In this case, it is undisputed that Plaintiff is an EPSDT program participant.

**28.** Indeed, at oral argument on January 22, 2010, Defendant stipulated that diapers ameliorate Plaintiff's condition. [*See* 1/22/10 Tr. p. 10:6].

**29.** It bears mentioning that following oral argument on October 23, 2009, I granted the parties a period of thirty (30) days additional discovery. Despite the additional discovery period, Defendant did not provide any evidence controverting Dr. Ofir's conclusion that incontinence diapers are necessary to amelio-

rate Plaintiff's condition. [*See* Ofir Decl. ¶¶ 10–15.]

**30.** Defendant raises two additional arguments in this regard. First, Defendant refers to Plaintiffs "toilet training" as a basis for disputing the material fact that she needs diapers. [*See e.g.,* 82 at p. 3, ¶¶ 11, 22, 27.]. Despite this assertion, the record clearly shows that at no point does Mr. Smith indicate that there has been any success whatsoever in this attempt. [*See* DE 70, p. 21: 22–25 ("She[ ] doesn't go on her own but every two or three hours we sit her on the toilet"); *see also* DE 69 p. 12:19–22 ("Medically, I[ ] don't think that with her level of mental retardation she would be able to [be toilet trained].") ]. Next, Defendant argues that Plaintiff does not need diapers because she "is able to communicate her needs." [*See,* e.g., DE 82, p. 7 ¶ 20–22]. However, Mr. Smith testified that plaintiff cannot talk at all and cannot "do" sign language or anything

Moreover, I note that states *can* implement prior authorization requirements and other utilization review mechanisms before approving covered items to children under 21. *See* 42 C. F.R. § 440.230(d) ("The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."); *but see, Dickson,* 391 F.3d at 591 ("[U]nder the CMS interpretation, a state Medicaid agency may regulate the amount, duration and scope of medical assistance provided, but its regulation must comply with the statutory requirement that all health care and services described in § 1396d(a) that are necessary to the corrective and ameliorative purposes of the EPSDT program must be provided."). As an example of this discretion at work, Defendant points to *Alexander v. Choate,* 469 U.S. 287, 302–303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), in which the U.S. Supreme Court upheld Tennessee's limitation, to fourteen days, on inpatient hospital stays annually covered by Medicaid. Defendant also highlights the U.S. Department of Health and Human Services' (HHS) position that amount, duration, and scope limitations are proper if, *but only if,* they still reasonably permit the particular Medicaid service at issue to achieve its purpose. *See* 42 C.F.R. § 440.230(a) & (b); *see also* 42 U.S.C. § 1396a(a)(17)

("Under federal law, when applying the Medicaid statute, states must "include reasonable standards . . . for determining . . . the extent of medical assistance under the plan which (A) are consistent with the objectives of [the Medicaid Act].""). However, Defendant fails to note that the State of Florida has not implemented an amount, duration, or scope limitation on the EPSDT program at issue here, despite vague protestations to the contrary.[31] Instead, it simply has *prohibited* a right to incontinence supplies covered by the EPSDT program and thus mandated by federal Medicaid law.

Finally, Defendant proffers the following argument: Florida has limited resources, particularly in an economic downturn, and must make tough choices about where to invest those limited resources, and that courts should leave such choices to the politically responsible branches of government. [*See* DE 36 at 14–17.] While I doubt neither the gravity nor the difficulty of funding Medicaid obligations, such concerns do not excuse a violation of federal law.[32] *See Cook,* 109 F.3d at 704 (". . . budgetary constraints alone can never be sufficient . . . [to] evade the requirements of the Medicaid Act . . ."); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly,* 572 F.3d 644, 659 (9th Cir.2009) ("A

else. [DE 70, p. 14: 1–15.] The extent of Mr. Smith's testimony regarding Plaintiff communicating in any way is that "she will go to something if she wants it . . . like cereal." *Id.* Moreover, Defendant has stipulated that Plaintiff is non-verbal. [DE 82, ¶ 9.] Accordingly, these arguments are unsupported by the record, and thus, insufficient to preclude summary judgment.

31. [*See* DE 37, ¶ 25 ("It is common place in today's health care environment that treating practitioners are not the ones who determine what is needed to ameliorate a condition, but rather a team of medically-trained clinicians have made those determinations and those standards are used throughout the health care

industry. The Medicaid programs utilize many of the same utilization management programs to ensure adequate amount, duration, and scope that Medicare and commercial insurance payors utilize, and have done so in this case.").]

32. Indeed, Defendant has estimated that in this fiscal environment adding diapers for EPSDT children to the Medicaid program will cost about $19 million per year. [DE 82, ¶ 42–44]. This figure represents both state and federal matching funds. *Id.* Thus, at the current federal matching rate of 67% for Florida, of the estimated $19 million, state funds would amount to approximately $6,312,038. *Id.*

budget crisis does not excuse ongoing violations of federal law, particularly when there are no adequate remedies available other than an injunction."); *see also Maxwell–Jolly*, 572 F.3d at 658 ("Federal courts [ ] have the power to enjoin state actions, in part, because those actions sometimes offend federal law provisions, which, like state statutes, are themselves enactments of its people or their representatives" (internal quotations and citations omitted, emphasis in original omitted)).[33]

## B. *No Adequate Remedy At Law*

To obtain a permanent injunction, in addition to prevailing on the merits of the case, a party also must demonstrate that no adequate remedy at law exists for the violation of right asserted in the complaint. *Alabama*, 424 F.3d at 1128. Plaintiff asks this Court to enjoin Defendant, the head of Florida's Medicaid agency, from continuing to implement a policy that Plaintiff has established violates the federal Medicaid Act. To that end, the only effective relief this Court could grant is injunctive relief. *See Edmonds v. Levine*, 417 F.Supp.2d 1323, 1341 (S.D.Fla.2006) ("In such a case, the only relief available is injunctive relief." (emphasis in original)). Thus, Plaintiff has satisfied this element.

## C. *Irreparable Harm*

Plaintiff similarly has established irreparable harm. In cases alleging that a state law violates the federal Medicaid statute and requesting injunctive relief, irreparable harm nearly always follows a finding of success on the merits. *See, e.g., Edmonds*, 417 F.Supp.2d at 1342 ("The Court has already concluded that AHCA's Neurontin

policy violates the Medicaid Act ... Consequently, AHCA is denying Medicaid benefits to which Plaintiffs are legally entitled. The denial of medical benefits, and resultant loss of essential medical services, constitutes an irreparable harm to these individuals."); *Maxwell–Jolly*, 572 F.3d at 658 ("This court has previously held that Medi–Cal recipients may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny them needed medical care." (citation omitted)); *Mitson v. Coler*, 670 F.Supp. 1568, 1576 (S.D.Fla.1987) (finding irreparable harm where Medicaid class members are threatened with potential denial of nursing home service); *Mass. Ass'n of Older Am. v. Sharp*, 700 F.2d 749, 753 (1st Cir.1983) ("Termination of benefits that causes individuals to forego such necessary medical care is clearly irreparable harm."); *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir.1982) (irreparable injury shown when enforcement of a Medicaid rule "may deny [plaintiffs] needed medical care").

Dr. Ofir prescribed diapers for Plaintiff because he deemed them necessary for her physical and mental health, and this medical finding is uncontroverted. [*See* DE 26–2 ¶ 19.]. Denying a Medicaid recipient an essential medical service "constitutes [ ] irreparable harm". *Edmonds*, 417 F.Supp.2d at 1342.

## IV. Conclusion

In light of the foregoing, I conclude that Defendant has failed to raise any issues of material fact to preclude summary judgment. Viewing the undisputed facts in the light most favorable to Defendant, Plaintiff

---

**33.** In this case, Defendant does not dispute that Plaintiff can enforce EPSDT provisions by invoking § 1983. Moreover, for the reasons articulated in *Dickson*, I concluded that Medicaid law confers upon eligible children a federal right to health care services, treatment and measures mandated by the EPSDT pro-

gram. *See Dickson*, 391 F.3d at 602–06; *see e.g Memisovski ex rel. Memisovski v. Maram*, 2004 WL 1878332 (N.D.Ill.2004); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 293–94 (N.D.Ga.2003); *Collins v. Hamilton*, 231 F.Supp.2d 840, 846–47 (S.D.Ind.2002).

is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED AND ADJUDGED that

1. Plaintiff's Motion for Summary Judgment [**DE 26**] is GRANTED.

2. Defendant is hereby ENJOINED from denying coverage of incontinence diapers and briefs to EPSDT-eligible children who require such supplies as medically necessary to ameliorate their condition in accordance with the relevant EPSDT provisions of the Medicaid Act.

3. Defendant shall provide notice of any Florida Medicaid program policy changes made subsequent and consistent with this Order to all DME/ Medical Supply providers that contract with AHCA.

4. After Plaintiff depletes the supply of diapers provided by the Florida Agency for Persons with Disabilities,[34] AHCA shall cover Plaintiff's prescribed diapers.

5. Defendant's Motion to Strike [**DE 78**] is GRANTED.

6. All pending motions are DENIED AS MOOT and all upcoming hearings are CANCELLED.

7. This case is CLOSED.