**K.G., by and through his next friend, Iliana GARRIDO, Plaintiff,**

v.

**Elizabeth DUDEK, in her official capacity as Secretary, Florida Agency for Health Care Administration, Defendant.**

Case No. 11–20684–CIV.

United States District Court, S.D. Florida.

Nov. 1, 2011.

Miriam E. Harmatz, Florida Legal Services Inc. Miami Advocacy Office, Miami, FL, Monica Vigues-Pitan, Legal Services of Greater Miami, Neil David Kodsi, Alderman & Kodsi, for Plaintiffs.

Andrew T. Sheeran, Debora E. Fridie, Agency for Health Care Administration Office of General Counsel, Tallahassee, FL, for Defendant.

*ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 45) AND GRANTING PLAINTIFF'S FIRST AMENDED MOTION FOR PRELIMINARY INJUNCTION (D.E. 10)*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Plaintiff K.G.'s First Amended Motion for Preliminary Injunction ("Motion" or "Mot.," D.E. 10), filed on March 10, 2011,[1] to which Defendant Elizabeth Dudek, in her official capacity as Secretary, Florida Agency for Health Care Administration, filed her Response in Opposition to Plaintiff's Motion for Preliminary Injunction ("Def.'s Resp.," D.E. 17) on March 28, 2011. Plaintiff filed his Reply in Support of Motion for Preliminary Injunction ("Reply," D.E. 21) on April 7, 2011. On June 21, 2011, the Court referred Plaintiff's Motion to Magistrate Judge John J. O'Sullivan (*see* D.E. 32), who held a hearing on July 18, 2011 (*see* D.E. 36, 44, 57). On July 22, 2011, the Magistrate Judge issued his Report and Recommendation ("Report," D.E. 45), recommending the Court grant Plaintiff's Motion. On August 5, 2011, Defendant filed Objections to the Magistrate Judge's Report and Recommendation ("Objections," D.E. 52), to which Plaintiff filed his response ("Response" or "Pl.'s Resp.," D.E. 59) on August 19, 2011. After an independent review of the Report, the Objections, the Response, and the record, the Court finds as follows.

## I. Background

### A. Factual Background

K.G., a five-year old boy, is a Florida Medicaid recipient who has been diagnosed with autism. (Complaint, D.E. 1, ¶ 1.) K.G.'s mother, Iliana Garrido, asserts that when K.G. was an infant, be "appeared to meet all his early developmental milestones[,] such as [speaking his] first words at seven months and walking at twelve months." (Declaration of Iliana Garrido ("Garrido Decl."), D.E. 10–5, ¶ 4.) In addition, he was a "very social child" who "played and communicated well with

---

1. On July 7, 2011, Plaintiff moved to amend his *Complaint for Declaratory and Injunctive Relief*, to, *inter alia,* add additional plaintiffs, (*see* Motion to Amend the Complaint and Add Additional Parties, D.E. 40), and the Court granted the Motion on September 7, 2011 (*see* Order, D.E. 62). However, Plaintiff's First Amended Motion for Preliminary Injunction and the relief sought pertains only to the original plaintiff, K.G. (*See* Transcript, D.E. 57, at 15:13–15 (colloquy between the Court and Plaintiff's counsel); *see also* Pl.'s Resp. 12.)

others" and was eating solid table foods. (*Id.* ¶ 5.) However, when K.G. was approximately 19 months old. his mother noticed a change in K.G.'s behavior and a regression in his development. (*See id.* ¶¶ 5–8.) His mother describes K.G.'s behavior as follows:

> [K.G.] became very withdrawn and extremely irritable. He stopped using his words and would just point to items that he wanted. When this did not work, he would become clearly frustrated, have severe tantrums, exhibit aggressive behavior, and withdraw even further.
>
> He no longer had playful interactions with people. He did not display the same affectionate behavior and would avoid eye contact.
>
> Additionally, [K.G.] stopped eating solids. He would no longer eat regular table food, and we had to puree all of his foods.

(*Id.* ¶¶ 6–8.) At present, "K.G.'s behavior patterns include: extreme irritability, hyperactivity, incessant screaming, frequent tantrums, and inappropriate aggression towards himself and others." (Declaration of Elza Vasconcellos, M.D. ("Vasconcellos Decl."), D.E. 10–4, ¶ 6; *see also* Garrido Decl. ¶¶ 11–12.)

K.G.'s treating neurologist, Dr. Elza Vasconcellos, has diagnosed K.G. with Autism Spectrum Disorder. (Vasconcellos Decl. ¶ 4.) Autism is a "developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." 34 C.F.R. § 300.8(c)(1)(i) (2011).

On May 25, 2010, and again on September 3, 2010, Dr. Vasconcellos prescribed

Applied Behavioral Analysis ("ABA") therapy, including an evaluation and treatment, to K.G. (*See* Prescriptions, D.E. 10–6, at 2–3; *see also* Vasconcellos Decl. ¶ 8.) "ABA is an intensive service which provides [a] one-on-one structured program that treats behavioral needs." (Vasconcellos Decl. ¶ 8.) Dr. Vasconcellos emphasizes the necessity of ABA therapy for K.G. as follows:

> [P]roviding K.[G.] with a sufficient amount of ABA services presents the best possible opportunity for reducing his problematic behaviors and preventing further deterioration of his condition. If left untreated, his current maladaptive behaviors will likely keep him out of regular school and unable to obtain the level of education that he may be capable of attaining. . . . [I]t is imperative that these services be provided as soon as possible.

(*Id.* ¶ 9.)

Due to the family's limited income, K.G.'s parents cannot afford the cost of his prescribed ABA services. (Compl. ¶ 20; *see* Garrido Decl. ¶ 20.) Medicaid is K.G.'s only source of health care coverage. (Compl. ¶ 13; Garrido Decl. ¶ 20.) Florida's Medicaid program, which is administered by the Florida Agency for Health Care Administration ("AHCA" or "the Agency"), does not cover ABA therapy unless the child has obtained a waiver. *See* FLA. ADMIN.CODE ANN. r. 59G–4.050 (incorporating by reference The Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook); *see also* The Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook, D.E. 10–2, at 2 (stating that "Medicaid does not pay for community behavioral health services for treatment of autism" and informing that "[r]equests for exceptions to service limits may be made for recipients under age 21 through Medicaid's prior authorization process"); 42 U.S.C. § 1396n(c)

(2006) (discussing waivers). K.G.'s mother has applied for a waiver, for which K.G. was found eligible based on his autism, and K.G. is now on a waiting list. (Garrido Decl. ¶ 17.)

Because Medicaid does not cover ABA and K.G. has not yet obtained a waiver, Dr. Vasconcellos has had to prescribe medications for K.G. that have "potentially adverse side effects" in an attempt to manage K.G.'s behavior. (Vasconcellos Decl. ¶ 11.) Despite taking these medications, K.G. "is still exhibiting inappropriate and aggressive behavior." (*Id.*) Dr. Vasconcellos believes that if K.G. does not receive ABA services, he "could lose the ability to communicate altogether," which "could result in the need for supervision for the rest of his natural life and greatly increase his risk of institutionalization." (*Id.* ¶ 15.) She further opines that ABA "will provide [K.G.] with the greatest opportunity to reduce his disability and restore him to his best functional level." (*Id.* ¶ 16.)

## B. Procedural History

Plaintiff seeks a mandatory preliminary injunction requiring the Agency to provide Medicaid coverage for K.G.'s ABA therapy pending the outcome of this case. (Mot. 1–2.) Additionally, Plaintiff requests that the Court waive the requirement that he post a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. (*Id.* at 17–18.)

The Magistrate Judge concluded that Plaintiff satisfies the four requirements for a preliminary injunction and has recommended that Plaintiff's Motion be granted. (Report 23.) First, the Magistrate Judge found that Plaintiff "has made a clear showing of likelihood of success on the merits" that Defendant is required to provide coverage for K.G.'s ABA therapy, and therefore, Florida Administrative Code Rule 59G–4.050 excluding ABA coverage for qualified Medicaid recipients under the age of 21 violates the federal Medicaid Act. (*Id.* at 17.) Second, citing the declaration of K.G.'s treating neurologist, who described the possible health risks K.G. may face without ABA therapy, and the declaration of Dr. James A. Mulick, who described the effectiveness of ABA therapy, the Magistrate Judge found that Plaintiff has established that an irreparable injury will occur if no preliminary injunction is issued. (*Id.* at 18–19.) Third, in balancing the harms between the parties, the Magistrate Judge found that the harm to K.G.'s health outweighed the fiscal harm to the State of paying approximately $22,000 to $33,000 for ABA services for K.G. (assuming an eight month duration of the preliminary injunction). (*Id.* at 19–21.) Fourth, the Magistrate Judge found that the public interest would be served by the issuance of a preliminary injunction because providing K.G. with necessary medical services would further the purpose of the Medicaid program. (*Id.* at 21.) Finally, the Magistrate Judge recommended that the Court waive the requirement that Plaintiff post a bond under Rule 65(c) of the Federal Rules of Civil Procedure because Plaintiff is indigent and Defendant did not oppose the Motion. (*Id.* at 22.)

■ Defendant objects to the Magistrate Judge's Report and asks that this Court deny Plaintiff's Motion because Plaintiff does not have a substantial likelihood of prevailing on the merits and because the balance of harms and the public interest factors favor Defendant.[2] (Objec-

---

**2.** Defendant does not object to the Magistrate Judge's finding that Plaintiff has established that an irreparable injury will occur if no preliminary injunction is issued. Failure to timely file objections shall bar parties from attacking on appeal the factual findings contained in the report *See Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993). After an independent

tions 1.) Defendant argues that Plaintiff does not have a substantial likelihood of prevailing on the merits because the state is entitled to define the scope of services covered by the Medicaid Act, the state has determined that ABA is not within that scope because ABA is experimental, and the Court can overturn the state's determination only if it is unreasonable. (*Id.* at 11.) Defendant further contends that Plaintiff has failed to provide the Court with any scientific evidence that ABA is effective as a medical treatment for autism, and the Magistrate Judge erred by crediting the testimony of Dr. James Mulick. (*Id.* at 5–7.) Additionally, Defendant argues that the Magistrate Judge misinterpreted a Florida Medicaid regulation that defines "experimental." (*Id.* at 7–8.) Finally, Defendant argues that the balance of the harms and public policy factors weigh in Defendant's favor because if the Court imposes a preliminary injunction in this case, federal law would require the Agency to provide ABA therapy to all children under the age of 21 for whom it is determined to be medically necessary. (*Id.* at 12.) If the state fails to do so, Defendant argues that the Agency would risk jeopardizing some or all of Florida's federal Medicaid funding. (*Id.*)

## II. Standard of Review

 Upon receipt of the Report and the objections of the parties, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (2006). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* In making its

determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir.2007). Thus, the Court must now make a de novo determination of whether the Magistrate Judge correctly recommended that the Court issue a mandatory preliminary injunction requiring the Agency to provide coverage for K.G.'s ABA therapy as prescribed by his physician.

## III. Discussion

 "[A] district court may grant a preliminary injunction only if the movant establishes the following: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir.2008) (quotation omitted). "When the state is a party, the third and fourth considerations are largely the same." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010) (citation omitted).

 "A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Id.* (citation omitted). "When a preliminary injunction goes beyond the status quo and seeks to force one party to act, it becomes a mandatory or affirmative injunction and the burden placed on the moving party is increased." *Mercedes–Benz U.S. Int'l, Inc.*

review of the Report, the Court adopts the Magistrate Judge's finding on irreparable harm. (*See* Report at 17–19.) Additionally, Defendant does not object to the Magistrate

Judge's finding that no bond requirement should be imposed on Plaintiff, and after an independent review of the Report, the Court adopts that finding as well. (*See id.* at 22.)

*v. Cobasys, LLC,* 605 F.Supp.2d 1189, 1196 (N.D.Ala.2009) (citing *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.,* 441 F.2d 560, 561 (5th Cir.1971)).³ A mandatory preliminary injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Exhibitors,* 441 F.2d at 561 (quotation omitted).

### A. Substantial Likelihood of Success on the Merits

Medicaid is a cooperative federal-state program designed to assist states with the cost of providing health care to certain individuals who are unable to afford their own health care costs. *See* 42 U.S.C. §§ 1396–1396v; *see also Moore ex rel. Moore v. Reese,* 637 F.3d 1220, 1232 (11th Cir.2011). "Actual Medicaid relief is administered through state agencies pursuant to a Medicaid plan that has been approved by the U.S. Department of Health and Human Services." *Pharm. Research & Mfrs. of Am. v. Meadows,* 304 F.3d 1197, 1199–1200 (11th Cir.2002). AHCA is the state agency that administers the Medicaid program in Florida. FLA. STAT. §§ 409.901(14), 409.902 (2011).

"A state's participation in the Medicaid program is voluntary, but once a state opts to participate it must comply with federal statutory and regulatory requirements." *Moore,* 637 F.3d at 1232 (citing *Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)). Participating states are required to make seven categories of services available to all individuals who are covered by the state's Medicaid plan. *See* 42 U.S.C. § 1396a(a)(10)(A) (requiring the state to provide at least the services listed in § 1396d(a)(1) through (5), (17), and (21)); *see also Moore,* 637 F.3d at 1232. In

addition to the seven categories of mandatory services, the Medicaid Act lists twenty-one categories of optional services that the state has the discretion to include in its Medicaid plan. *See* 42 U.S.C. § 1396d(a)(6)-(16), (18)-(20), (22)-(28).

Included among the list of mandatory services are "early and periodic screening, diagnostic, and treatment services" ("EPSDT") for Medicaid-eligible children under the age of 21. 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396d(a)(4)(B). EPSDT includes screening services, vision services, dental services, and hearing services. 42 U.S.C. § 1396d(r)(1)-(4). In addition, the section of the Medicaid Act related to EPSDT services contains a catchall provision that requires the state to provide Medicaid-eligible children with:

> [s]uch other *necessary* health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, *whether or not such services are covered under the State plan.*

42 U.S.C. § 1396d(r)(5) (emphasis added). "Thus, even if a particular service or treatment is an 'optional benefit' and not included [in] the State's Medicaid plan for adults, the state must nevertheless provide, under the EPSDT program: (1) any medical assistance that a state is permitted to cover under § 1396d(a) of the Medicaid Act [that is] (2) necessary to 'correct or ameliorate' the child's condition." *Smith v. Benson,* 703 F.Supp.2d 1262, 1269 (S.D.Fla.2010) (quoting 42 U.S.C. § 1396d(r)(5)); *see also Moore,* 637 F.3d at 1233–34 (stating that "[a]s to Medicaid-eligible children § 1396d(r)(5) requires that states must

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the Fifth Circuit before October 1, 1981, unless subsequently overruled.

cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)" (internal quotation omitted)); *Rosie D. v. Romney,* 410 F.Supp.2d 18, 26 (D.Mass.2006) (stating that "while a state may choose which medical services beyond the mandated seven it may offer to eligible adults, states are bound, when it is medically necessary, to make available to Medicaid-eligible children *all* of the twenty-eight types of care and services included as part of the definition of medical assistance in the Act" (emphasis in original)).

Although the EPSDT statutory provisions use the terms "necessary" and "medical necessity," federal law does not define either term. *See generally* 42 U.S.C. § 1396d (setting forth definitions under the Medicaid Act). Instead, federal law grants states the authority to set reasonable standards for the terms "necessary" and "medical necessity." 42 U.S.C. § 1396a(a)(17) (requiring the state plan to "include reasonable standards ... for determining ... the extent of medical assistance under the plan which are consistent with the objectives of [the Medicaid Act]"); 42 C.F.R. § 440.230(d) (2011) (allowing the state agency to "place appropriate limits on a service based on such criteria as medical necessity"). Florida law authorizes AHCA to determine which services are "medically necessary." Fla. Stat. § 409.905(2) (2011). AHCA's definition of medical necessity requires that the services "[b]e consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational." Fla Admin. Code Ann. r. 59G–1.010(166)(a)3 (2011). Therefore, if AHCA determines

that a treatment is "experimental," the treatment is properly excluded from Medicaid coverage in Florida. *See id.; see also* Fla. Stat. § 409.905(2); *Rush v. Parham,* 625 F.2d 1150, 1155 (5th Cir.1980) (finding that the exclusion of experimental treatments from Medicaid coverage is "fully consonant with a requirement that all medically necessary services be funded").

Defendant argues that Plaintiff cannot show that he has a substantial likelihood of success on the merits for two main reasons: (1) ABA is not covered under § 1396d(a)(13) of the Medicaid Act (Objections 11); and (2) Plaintiff fails to prove, "with the overwhelming evidence needed to secure a mandatory injunction, that the Agency arbitrarily and without any supporting evidence determined ABA to be unproven and experimental," (*id.* at 5). Plaintiff argues that (1) the Magistrate Judge did not err in finding that ABA is a covered service under 42 U.S.C. § 1396d(a)(13) and therefore must be covered pursuant to the requirements related to EPSDT (Pl.'s Resp. 7–11): and (2) the Magistrate Judge did not err in relying on Plaintiff's expert and in finding Defendant's determination that ABA is experimental was unreasonable (*id.* at 2–7).

### 1. Whether ABA is Covered by § 1396d(a)(13) of the Medicaid Act

Plaintiffs autism was discovered through an EPSDT screening. (Report 12–13.) [4] When a medical condition is discovered as part of an EPSDT screen, the state is required to provide the child with any service described in 42 U.S.C. § 1396d(a) that is necessary to correct or ameliorate the child's condition. 42 U.S.C.

---

**4.** In her Response, Defendant argued that K.G. failed to allege that his autism was discovered through an EPSDT screening. (Def.'s Resp. 17.) The Magistrate Judge found that EPSDT screening includes any vis-

it to a physician to determine if the child has a condition requiring further assessment and found that K.G. had this type of screening. (Report 12–13.) Defendant did not object to this finding.

§ 1396d(r)(5). Thus, in order to prevail on the merits in this case, Plaintiff first must show that he is entitled to ABA because ABA falls under one of the categories enumerated in 42 U.S.C. § 1396d(a)(1)-(29). Plaintiff argues that behavioral health services, such as ABA, are included in the list of services under § 1396d(a)(13)of the Medicaid Act.[5] (Pl.'s Resp. 7; *see also* Mot. 11.) The services under this provision are as follows:

> other diagnostic, screening, preventive, and *rehabilitative services,* including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, *for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level* [.]

42 U.S.C. § 1396d(a)(13) (emphasis added). The parties have not cited to—and the court has not found—any cases in the Eleventh Circuit that address the scope of services that are encompassed in this provision. Defendant argues that the plain meaning of the word "rehabilitative" means that ABA is not within the scope of the services. (Objections 11.) Federal regulations define "rehabilitative services" as:

> any medical or remedial services recommended by a physician or other licensed practitioner of the healing arts, within the scope of his practice under State law, for maximum reduction of physical or mental disability and *restoration of a recipient to his best possible functional level.*

42 C.F.R. § 440.130(d) (emphasis added). Citing the definition of "rehabilitative ser-

vices," Defendant argues that "Plaintiff has not provided a single piece of evidence that he ever attained a functional Level to which he is seeking to be restored." (Objections 11; *see also* Transcript 28:17–31:17 (stating that "restore means to return" and "unless the purpose of ABA is to restore [K.G. to] the function of a [1]9 month old ... it doesn't fall under any of those categories in the Medicaid Act").)

▪ First, the Court finds that at this stage in the litigation, Plaintiff set forth sufficient evidence that he achieved a functional level to which he is seeking to be restored. A comparison of K.G.'s behavior before and after he obtained 19 months of age indicates that K.G.'s functional level has diminished. In her sworn declaration, K.G.'s mother, Iliana Garrido, described K.G.'s mental and social development from birth through 19 months and his subsequent regression in mental and social abilities. (*See* Garrido Decl. ¶¶ 4–19.) Garrido attested that her son met early developmental milestones, "such as first words at seven months and walking at twelve months." (*Id.* ¶ 4.) She also stated that "K.G. was a very social child [who] played and communicated well with others. Additionally, he was eating solid table foods." (*Id.* ¶ 5.) When K.G. was approximately 19 months old, he "became withdrawn and extremely irritable[,] [h]e stopped using his words," "[h]e no longer had playful interactions with people," and he "stopped eating solids." (*Id.* ¶¶ 6–8.) Dr. Vasconcellos, K.G.'s treating physician and a Board Certified Pediatric Neurologist (Vasconcellos Decl. ¶¶ 1, 3), has attested that providing K.G. with ABA services "will provide him with the greatest opportunity to reduce his disability and restore

---

**5.** Plaintiff also argued that ABA therapy fells under § 1396d(a)(6). (*See* Mot. 11–13.) However, because the Magistrate Judge determined that ABA therapy falls under

§ 1396d(a)(13), the Magistrate Judge did not determine whether ABA therapy also falls under § 1396d(a)(6). (Report 16.)

him to his best possible functional level" (*id.* ¶ 16).

Second, the Court notes that in interpreting § 1396d(a)(13) of the Medicaid Act, other courts have found that there is no requirement that children are eligible for services under this provision only if they are seeking restoration to a certain functional level that they have previously achieved. *See Parents League for Effective Autism Servs. v. Jones–Kelley,* 565 F.Supp.2d 905, 915 (S.D.Ohio 2008), *aff'd,* 339 Fed.Appx. 542, 544 (6th Cir.2009). Such a requirement "would mean that no child who is born with a disability could ever receive rehabilitative services [which] does not comport with the broad coverage afforded under the EPSDT mandate." *Id.* at 916. Instead, other courts have interpreted § 1396d(a)(13) to mean that "if a 'licensed clinician finds a particular service to be medically necessary to help a child improve his or her functional level, this service must be paid for by a state's Medicaid plan pursuant to the EPSDT mandate.'" *Id.* at 915 (quoting *Rosie D.,* 410 F.Supp.2d at 26) (citing *Collins v. Hamilton,* 349 F.3d 371, 375 (7th Cir.2003): *John B. v. Menke,* 176 F.Supp.2d 786, 800 (M.D.Tenn.2001)). Therefore, if the Court adopts this interpretation of § 1396d(a)(13) of the Medicaid Act, Plaintiff would have to prove only that a licensed clinician finds ABA is medically necessary to help K.G. improve his functional level. As noted above, Dr. Vasconcellos, K.G.'s treating physician, has prescribed ABA for K.G. and has stated that ABA "will provide him with the greatest opportunity to reduce his disability and restore him to his best possible functional level." (Vasconcellos Decl. ¶ 16).

 Defendant also argues that the state is "entitled to determine the scope of services under § 1396d(a)(13) and the Court can only overturn that determination if it is unreasonable." (Objections 11 (citing *Alexander,* 469 U.S. at 303, 105 S.Ct. 712; *Moore,* 637 F.3d at 1255).) In *Alexander,* the Supreme Court stated that

the federal Medicaid Act "gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage." 469 U.S. at 303, 105 S.Ct. 712. The Eleventh Circuit echoed this principle in *Moore,* explaining that "[a] State may establish the amount, duration, scope of private duty nursing services provided under the required EPSDT benefit" 637 F.3d at 1255. Although these cases address the ability of a state to limit the amount of covered services, there is no authority that permits a state to deny a covered service altogether to Medicaid-eligible individuals under the age of 21. In fact, the Eleventh Circuit in the same case recognized that pursuant to 42 U.S.C. § 1396d(r)(5), the provision of the Medicaid Act related to EPSDT, "states *must cover* every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)." *Id.* at 1233–34 (emphasis added); *see also Pittman v. Sec'y Fla. Dep't Health & Rehab. Servs.,* 998 F.2d 887, 891–92 (11th Cir.1993) (per curium) (finding that "[t]he language of § 1396d(r)(5) expressly requires Medicaid participating states to provide necessary treatment 'to correct or ameliorate defects and physical ... illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan'" (quoting 42 U.S.C. § 1396d(r)(5))).

### 2. Whether AHCA Reasonably Concluded that ABA is "Experimental"

In order to prevail on the merits of this case, Plaintiff also must show that AHCA acted unreasonably when it determined that ABA is experimental. The former Fifth Circuit set forth the following guidelines for determining whether a medical service is "experimental":

The clearest articulation of the considerations that go into determining whether a particular service is experimental is found in a letter Medicare uses to explain to its clients why a service is ineligible for reimbursement:

In making such a decision (whether to provide payment for a particular service), *a basic consideration is whether the service has come to be generally accepted by the professional medical community as an effective and proven treatment for the condition for which it is being used.* If it is, Medicare may make payment. On the other hand, if the service or treatment is not yet generally accepted, is rarely used, novel or relatively unknown, then authoritative evidence must be obtained that it is safe and effective before Medicaid may make payment.

*Rush*, 625 F.2d at 1156 n. 11 (quoting Enclosure #2 to Intermediary Letters Nos. 77–4 & 77–5, (1976 Transfer Binder) Medicare & Medicaid Guide (CCH) P 28,-152 (1976)) (emphasis added). These guidelines are similar to the definition of "experimental" as set forth by AHCA. AHCA's regulations state that "experimental" means, in relevant part, "Reliable evidence shows that the consensus among experts regarding the ... medical treatment or procedure is that further studies or clinical trials are necessary to determine its ... efficacy as compared with the standard means of treatment...." FLA. ADMIN. CODE ANN. r. 59G–1.010(84)(a)3. "Reliable evidence" means, in relevant part, "only published reports and articles written in the authoritative medical and scientific literature." FLA. ADMIN. CODE Ann. r. 59G–1.010(84)(b).[6] The role of the Court is to decide whether AHCA's determination that ABA is experimental was reasonable. *See Rush*, 625 F.2d at 1157 (remanding to the district court to decide "whether [the state's] determination that transsexual surgery is experimental is reasonable"); *Miller v. Whitburn*, 10 F.3d 1315, 1321 (7th Cir.1993) (stating that "the district court may decide only whether [the state's] determination that the liver-bowel transplant procedure is experimental is reasonable" (citing *Rush*, 625 F.2d at 1157)).

---

**6.** The State's complete definitions of "experimental" and "reliable evidence" are as follows:

(84) "Experimental" or "Experimental and clinically unproven" or "Investigational" as related to drugs, devices, medical treatments or procedures means:

(a)1. The drug or device cannot be lawfully marketed without approval of the U.S. Food and Drug Administration (FDA) and approval for marketing has not been given at the time the drug or device is furnished; or

2. Reliable evidence shows that the drug, device or medical treatment or procedure is the subject of on-going phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis; or

3. Reliable evidence shows that the consensus among experts regarding the drug, device, or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, toxicity, safety, or efficacy as compared with the standard means of treatment or diagnosis.

4. The drug or device is used for a purpose that is not approved by the FDA.

(b) Reliable evidence shall mean only published reports and articles in the authoritative medical and scientific literature; the written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same drug, device or medical treatment or procedure; or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device or medical treatment or procedure.

FLA. ADMIN. CODE ANN. r. 59G–1.010(84).

 Based on a review of the record, Plaintiff has set forth sufficient evidence to establish that he has a substantial likelihood of proving that the Agency's determination that ABA is experimental was unreasonable. While neither party produced witnesses at the hearing before the Magistrate Judge (*see* Transcript. D.E. 57), Plaintiff filed two sworn declarations with his Motion. One sworn declaration was from Dr. Elza Vasconcellos, K.G.'s treating neurologist and Director of the Autism Clinic at Miami Children's Hospital, (Vasconcellos Decl. ¶¶ 2, 3), who asserted that "ABA has proven to be effective in moving autistic children who are on the spectrum out of the spectrum altogether" (*id.* ¶ 10). The other sworn declaration was from James Mulick, Ph.D., who has "published numerous articles[,] ha[s] presented and trained numerous professionals about autism and effective treatment of autism," and has "diagnosed and treated more than 3,000 individuals with autism and other developmental disabilities." (Declaration of James A. Mulick, Ph.D. ("Mulick Decl."), D.E. 10–3, ¶¶ 2, 3.) Dr. Mulick attested that ABA is an effective and proven treatment, stating:

> The type of behavioral health service known as ABA is a highly effective treatment in a high percentage of cases. . . .
>
> With sufficient early and intensive behavioral health services, many children with autism demonstrate a significant increase in their I.Q. scores during early childhood, and significant reduction in the disabling aspects of autism such that they arc eventually ready for successful mainstream schooling. . . .
>
> It is generally well accepted among psychologists and physicians treating autism that a sufficient amount of ABA is (for most children) medically necessary to ameliorate the problematic aspects of autism

[I]t is well established that autistic children need intensive behavioral health services as early as possible in order to achieve the maximum reduction of their disability and restore them to their best possible functional level. It is also well established that ABA is a highly effective form of behavioral health services. (*Id.* ¶¶ 16, 18, 20, 23.)

Defendant argues that "the Magistrate Judge erroneously credited the testimony of James Mulick" because Dr. Mulick "is not a medical doctor" and "is also not from Florida," so it "is unclear as to whether he is speaking about Florida's definition of medical necessity." (Objections 7.) However, Defendant cites no authority requiring—and Florida's regulations do not require—that an expert be a medical doctor for his or her opinion to be considered "reliable evidence." *See* FLA. ADMIN. CODE ANN. r. 59G–1.010(84). Furthermore, Dr. Mulick made various general statements as to the experts' consensus regarding the effectiveness of ABA, which appears to comport with Florida's definition of "medical necessity." *See* FLA. ADMIN. CODE ANN. r. 59G–1.010(166)(a)3 (defining "medical necessity"); *see also* FLA. ADMIN. CODE ANN. r. 59G–1.010(84) (defining "experimental").

Defendant did not produce any sworn testimony, either at oral argument or through affidavits or declarations. Instead, Defendant submitted four articles from 2008 and 2009 which Defendant asserts rebut the claims of Dr. Vasconcellos and Dr. Mulick regarding ABA's effectiveness. (*See* Def.'s Resp. 8–13: *see also* Objections 5.) Defendant asserts that these four "articles culled from peer-reviewed medical and scientific journals . . . support the Agency's conclusion that ABA is unproven as a medical treatment for autism." (Objections 5.) However, because Defendant did not provide any sworn testimony regarding these articles (or the underlying

studies), either through testimony at the hearing or through affidavits or declarations, the Court is unable to assess the reliability of these articles. *See Hemingway v. Ochsner Clinic*, 608 F.2d 1040, 1047 (5th Cir.1979) (stating that "for a party to rely upon a learned treatise, it must be established as a reliable authority by the testimony or admission of a witness or by other expert testimony or by judicial notice"). Although at the preliminary injunction stage the Court can consider hearsay materials such as the articles cited by Defendant, *see Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir.1995), because the Court is unable to assess the reliability of those articles, the Court is unable to ascertain whether AHCA acted reasonably when it determined that ABA is experimental.[7] Therefore, because Plaintiff has set forth two sworn declarations attesting to the effectiveness of ABA and Defendant has not set forth any reliable evidence to support the Agency's determination that ABA is experimental, the record before the Court shows that Plaintiff has a substantial likelihood of prevailing on the merits of this claim.[8]

## B. Balance of Harms and the Public Interest[9]

▇▇▇▇ Defendant argues that if the Court issues a preliminary injunction, the harm to the Agency and to the public interest would outweigh the harm to K.G. because there is a "strong possibility" that the Agency would have to provide ABA to all children under 21 for whom it is determined to be medically necessary or risk losing federal Medicaid funding. (Objections 12.) Plaintiff argues that the preliminary injunction would only apply to K.G., and it is unlikely that other similarly-situated children would be able to be granted mandatory preliminary injunctions for ABA before a final ruling on the merits in this case. Plaintiff further argues that the risk to K.G.'s health far outweighs the state's cost to provide him ABA treatment.

Plaintiff has provided substantial evidence of the adverse consequences to his health that he will suffer if he does not receive ABA services. Dr. Vasconcellos, K.G.'s treating neurologist, has stated that the medications that she has had to prescribe for K.G. have "potentially adverse side effects," and that despite taking these

---

7. Defendant argues, without citation, that "Plaintiff can only win by showing that the evidence the Agency relied upon is clearly outdated or fatally flawed." (Objections 6.) However, as set forth by the former Fifth Circuit, in determining whether the Agency has properly concluded that a service is experimental, "a basic consideration is whether the service has come to be generally accepted by the professional medical community as an effective and proven treatment for the condition for which it is being used." *Rush*, 625 F.2d at 1156 n. 11.

8. Defendant also argues that the Magistrate Judge erroneously interpreted the Florida regulation defining "experimental," FLA. ADMIN. CODE ANN. r. 59G–1.010(84)(a)3, "to mean that a 'standard' treatment does not ever need to be proven effective." (*See* Objections 8–11.) Defendant further argues that "[i]n order to

become the standard medical treatment for autism, then ABA must be proven more effective than no medical intervention at all." (*Id.* at 8.) However, the only sworn evidence in the record is that ABA has been proven effective. (*See* Mulick Decl. ¶¶ 16, 18, 20, 23; *see also* Vasconcellos Decl. ¶ 10.)

9. When a state is a party, the Court's consideration of the balance of the harms and the public interest "are largely the same." *Scott*, 612 F.3d at 1290. Therefore, the Court analyzes the balance of harms and the public interest factors together.

> In addition, with regard to the public interest factor, the Magistrate Judge found that providing K.G. with necessary medical services would further the stated purpose of the Medicaid program and would therefore be in the public interest. (Report 21.) Defendant did not object to this finding.

medications, K.G. "is still exhibiting inappropriate and aggressive behavior." (Vasconcellos Decl. ¶ 11.) These "maladaptive behaviors will likely keep him out of regular school and [result in him being] unable to obtain the level of education that he might be capable of obtaining." (*Id.* ¶ 9.) Dr. Vasconcellos believes that without ABA services, K.G. "could lose the ability to communicate altogether," which "could result in the need for supervision for the rest of his natural life and greatly increase his risk of institutionalization." (*Id.* ¶ 15.) She further opines that ABA "will provide [K.G.] with the greatest opportunity to reduce his disability and restore him to his best functional level." (*Id.* ¶ 16.)

The harm to Plaintiff's health as a result of being deprived of ABA services outweighs any harm to the state. Defendant argues that the federal Medicaid Act "requires that the services provided in state Medicaid programs be available to all in the same 'amount, duration, and scope' statewide." (Objections 12 (quoting 42 U.S.C. § 1396a(10)(B)).) Defendant contends that the expense of providing ABA treatment for 20,000 autistic children in Florida would be between $660 million and $1 billion per year. (Def.'s Resp. 18.) Defendant further contends that if the Agency did not provide ABA services to all children under the age of 21 for whom it is deemed medically necessary, it would be at risk of losing some or all of Florida's federal Medicaid funding. (Objections 12.)

However, the preliminary injunction in this case will apply only to Plaintiff, K.G., and will not apply to any other child in Florida. According to Defendant's cost estimates, providing ABA therapy for K.G. until a final resolution on the merits of this case will cost the state approximately $33,000 to $50,000 per year. (*See* Def.'s Resp. 18.) Furthermore, as the Magistrate Judge has found, the cost to the state likely will be approximately half of the state's estimate, given that a trial on the merits in this case is scheduled for March 12, 2012, less than six months from now. (*See* Order, D.E. 30, at 1; *see also* Report 20.) If Defendant prevails on the merits, AHCA will be able to terminate K.G.'s ABA therapy immediately. Therefore, the Court finds that the fiscal harm to Defendant resulting from an issuance of a preliminary injunction requiring the Agency to pay for K.G.'s ABA treatment until a resolution on the merits is far outweighed by the harm to K.G.'s physical and mental health if he does not immediately receive ABA therapy.

## IV. Conclusion

The Court finds Plaintiff has satisfied the four factors necessary to be granted a preliminary injunction. In addition, the Court adopts the Magistrate Judge's finding that no bond requirement should be imposed on Plaintiff. (*See* Report 22.)

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Magistrate Judge's July 22, 2011, Report and Recommendation (D.E. 45), is **ADOPTED;**

2. Consistent with this Order, Plaintiff's Motion for a Preliminary Injunction is **GRANTED;**

3. Defendant shall provide Medicaid coverage for K.G.'s ABA therapy as prescribed by his treating physician;

4. The requirement of a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure is **WAIVED.**

## *REPORT AND RECOMMENDATION*

JOHN J. O'SULLIVAN, United States Magistrate Judge.

THIS MATTER is before the Court on the Plaintiff's First Amended Motion for Preliminary Injunction (DE# 10, 3/10/11).[1]

1. The plaintiff has moved to amend the complaint to, *inter alia,* add additional plaintiffs to

This matter was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Joan A. Lenard for a report and recommendation in accordance with 28 U.S.C. § 636(b). *See* Order Referring Motion (DE# 32, 6/21/11). Having carefully considered this motion, the response, the reply, the court file and applicable law and having held a hearing on July 18, 2011, the undersigned respectfully recommends that: (1) the Plaintiff's First Amended Motion for Preliminary Injunction (DE# 10, 3/10/11) be **GRANTED;** (2) the Court issue a mandatory preliminary injunction requiring the defendant to provide coverage for K.G.'s Applied Behavioral Analysis (ABA) therapy pending the outcome of this litigation and (3) the Court waive the bond requirement of FED. R. CIV. P. 65(c).

## BACKGROUND

On March 10, 2011, the plaintiff filed Plaintiff's First Amended Motion for Preliminary Injunction (DE# 10, 3/10/11). The defendant filed her response on March 28, 2011. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17, 3/28/11). The plaintiff filed his reply on April 7, 2011. *See* Plaintiff's Reply in Support of Motion for Preliminary Injunction (DE# 21, 4/7/11). The parties both raised substantive arguments pertaining to the instant motion in support of and in opposition to the Plaintiff's Motion for an Expedited Ruling on Motion for Preliminary Injunction and Memorandum of Law in Support (DE# 33, 6/22/11). *See* Defendant's Response in Opposition to Plaintiff's Motion for an Expedited Ruling on Motion for Preliminary Injunction (DE# 39,

6/30/11); Plaintiff's Reply in Support of Motion for Expedited Ruling on Preliminary Injunction (DE# 43, 7/11/11). Although it was improper for *either* party to make these substantive arguments outside the briefs to the instant motion,[2] the undersigned has considered the arguments in issuing this Report and Recommendation. On July 18, 2011, the undersigned heard oral argument. This matter is now ripe for consideration.

## FACTS

### I. Medicaid

Medicaid, 42 U.S.C. § 1396 *et seq.*, is a cooperative program that provides federal and state medical care funding for certain individuals who are unable to afford their own medical costs. *See Alexander v. Choate,* 469 U.S. 287, 290 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (citation omitted). Each participating state must create its own administrative rules and regulations for operating the Medicaid program in that state. *Alacare, Inc.-North v. Baggiano,* 785 F.2d 963, 964 (11th Cir.1986). However, when a state voluntarily chooses to participate in Medicaid, it must provide certain mandatory medical services to Medicaid recipients. *Smith v. Benson,* 703 F.Supp.2d 1262, 1268 (S.D.Fla.2010).

### II. Early and Periodic Screening, Diagnosis and Treatment (EPSDT)

"Among the mandatory medical services required is the early and periodic screening, diagnosis and treatment ('EPSDT') program for Medicaid-eligible children under the age of 21." *Smith v. Benson,* 703 F.Supp.2d 1262, 1268 (S.D.Fla.2010). The EPSDT program is defined at 42 U.S.C.

---

this action. *See* Motion to Amend the Complaint and Add Additional Parties (DE# 40, 7/1/11). The instant motion and the relief sought pertains only to the original plaintiff, K.G. In this Report and Recommendation the word "plaintiff" will refer only to K.G.

**2.** *See* S.D. Fla. L.R. 7.1(c) (limiting the parties to a motion, response and reply memoranda and specifically stating that "[n]o further or additional memoranda of law shall be filed without prior leave of Court.").

§ 1396d(r). It mandates specific categories of services: screening, vision, dental and hearing services. 42 U.S.C. § 1396d(r)(1)-(4). Additionally, EPSDT contains a catchall provision which requires that participating states provide Medicaid-eligible children with "[s]uch other necessary health care, diagnostic services, treatment, and other measures **described** in subsection (a) of this section **to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.**" *Id.* at § 1396d(r)(5) (emphasis added). Subsection (a) lists mandatory and optional categories of care and services. *Id.* at § 1396d(a)(1)(29). Included in this list are:

> other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

*Id.* at § 1396d(a)(13). Subsection (a) also includes: "medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law." *Id.* at § 1396d(a)(6). Under EPSDT, a state must provide certain services to Medicaid recipients under the age of 21 even if that service is not available to adult recipients:

> [E]ven if a particular service or treatment is an 'optional benefit' and not included [in] the State's Medicaid plan

for adults, the state must nevertheless provide, under the EPSDT program: (1) any medical assistance that a state is permitted to cover under § 1396d(a) of the Medicaid Act; (2) necessary to 'correct or ameliorate' the child's condition. *Benson,* 703 F.Supp.2d at 1269 (noting that "every Circuit which has examined the scope of the EPSDT program has recognized that states **must** cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a).") (emphasis in original) (citations omitted).

### III. Florida Agency for Health Care Administration (AHCA)

The Florida Agency for Health Care Administration (hereafter "AHCA") is responsible for administering Florida's Medicaid program. *See* Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 2, 2/28/11). Florida's Medicaid program excludes coverage of behavioral health services to treat autism. *Id.;* Fla. Admin. Code R. 59G–4.050. Applied Behavioral Analysis (ABA) therapy is a form of behavioral health services excluded from Florida's Medicaid coverage.

### IV. K.G.

K.G., the plaintiff in the instant action,[3] is a five-year-old Florida Medicaid recipient. *See* Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 1, 2/28/11). K.G. was diagnosed with Autism Spectrum Disorder (ASD). *See* Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 4, 3/10/11). "Autism is a complex neurodevelopmental disability that generally appears during the first three years of life. It impacts the normal development of the brain, resulting in impairments of social interaction, verbal and non-verbal commu-

---

3. The complaint was filed on behalf of K.G. by K.G.'s mother Iliana Garrido, as K.G.'s next friend.

nication, leisure or play activities, learning, and, if untreated, often results in lifelong disability." Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶ 4, 3/10/11). At approximately 19 months of age, K.G.'s mother began noticing signs of significant regression in K.G's development. *See* Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 5, 3/10/11); Declaration of Iliana Garrido (DE# 10–5 at ¶ 5, 3/10/11). "[K.G.] lost his ability to verbally communicate, stopped eating solid foods, began exhibiting peculiar behaviors such as avoiding eye contract, and ... stopped playing with others." Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 5).[4] At present, K.G. exhibits "extreme irritability, hyperactivity, incessant screaming, frequent tantrums, and inappropriate aggression towards himself and others." *Id.* at ¶ 6.

On May 25, 2010 and September 3, 2010, K.G.'s treating neurologist, Dr. Elza Vasconcellos, prescribed Applied Behavioral Analysis (ABA) therapy to K.G. *See* Prescription (DE# 10–6 at 2–3, 3/10/11). K.G.'s family is indigent and cannot afford the cost of K.G.'s prescribed ABA therapy. *See* Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 20, 2/28/11); Declaration of Iliana Garrido (DE# 10–5 at ¶ 20, 3/10/11) (attesting that the family has difficulty paying for basic necessities). Medicaid is K.G.'s only source of healthcare coverage. *See* Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 13, 2/28/11).

The plaintiff's treating neurologist, Dr. Vasconcellos, opines that:

> providing K[.G.] with a sufficient amount of ABA [therapy] presents the best possible opportunity for reducing his problematic behaviors and preventing further deterioration of his condition. If left untreated, [K.G.'s] current maladaptive behaviors will likely keep him out of regular school and unable to obtain the level of education that he may be capable of attaining.... [I]t is imperative that [ABA therapy] be provided as soon as possible.

Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 9, 3/10/11).[5] Dr. Vasconcellos states that because ABA therapy is not covered by Medicaid she "ha[s] had to prescribe medications which have potentially adverse side effects" in an effort to control K.G.'s behavior. *Id.* at ¶ 11. Even with the medications, K.G. continues to exhibit inappropriate behavior. *Id.* at ¶ 12. If K.G. does not receive the required ABA therapy, K.G. "could lose the ability to communicate altogether" and it will "greatly increase his risk of institutionalization." *Id.* at ¶ 15. Dr. Vasconcellos further opines that ABA therapy "will provide [K.G.] with the greatest opportunity to reduce his disability and restore him to his best possible functional level." *Id.* at ¶ 16.

The plaintiff has also submitted the affidavit of Dr. James A. Mulick,[6] a professor at The Ohio State University, Department of Pediatrics, Division of Psychology. *See* Curriculum Vitae of James A. Mulick (DE# 10–3 at 1, 3/10/11). The defendant has not submitted an affidavit or declaration to counter Dr. Mulick's opinions and does not challenge Dr. Mulick's qualifications as an expert on autism. The undersigned credits Dr. Mulick's opinions that

---

**4.** K.G.'s speech has improved slightly. *See* Declaration of Iliana Garrido (DE# 10–5 at ¶ 10, 3/10/11).

**5.** The defendant has not submitted an affidavit or declaration countering Dr. Vasconcellos' medical opinions about K.G.'s condition and treatment.

**6.** Dr. Mulick also served as the plaintiffs' expert in *Parents League for Effective Autism Services v. Jones–Kelley,* 339 Fed.Appx. 542, 544 (6th Cir.2009), discussed *infra.*

"ABA is a highly effective treatment in a high percentage of cases" and that "[e]ven if not provided at an early age, intensive behavioral intervention can significantly increase the practical functioning of children with autism and is critical in helping restore the child to his best possible functional level. This is especially true with respect to the moderation of self-destructive, aggressive, and other kinds of socially undesirable or dangerous behavior." *See* Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶¶ 16, 19, 3/10/11). The undersigned also credits Dr. Mulick's statements that "[i]t is generally well accepted among psychologists and physicians with expertise in treating autism that a sufficient amount of ABA is (for most children) medically necessary to ameliorate the problematic aspects of autism . . . ." and that "[i]f [an autistic child] does not receive sufficient behavioral health services, the child is at grave risk of remaining unnecessarily disabled for the remainder of the child's natural life span. There is also a risk that an untreated person could become even more disabled through injury or loss of skills previously demonstrated." *Id.* at ¶ 20, 22.

### STANDARD OF REVIEW

■ A preliminary injunction may be granted only if the moving party establishes four elements: (1) a substantial likelihood of success on the merits; (2) an immediate and irreparable injury absent injunctive relief; (3) a threatened harm to the plaintiff that outweighs any injury the injunction would cause to the nonmovant and (4) the injunction will not disserve the public interest. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).[7] A preliminary injunction

is "an extraordinary and drastic remedy which should not to be granted unless the movant clearly carries the burden of persuasion" as to the four elements. *Canal*, 489 F.2d at 573. "When a preliminary injunction is sought to force another party to act . . . it becomes a mandatory or affirmative injunction and the burden on the moving party increases . . . . [A] plaintiff seeking such relief bears a heightened burden of demonstrating entitlement to preliminary injunctive relief." *Haddad v. Arnold*, 784 F.Supp.2d 1284, 1295–96 (M.D.Fla.2010) (citations omitted) (internal quotation marks omitted). "A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir.1958).

### LEGAL ANALYSIS

The plaintiff seeks a mandatory preliminary injunction requiring the defendant to provide Medicaid coverage for K.G.'s ABA therapy pending the outcome of this litigation. *See* Plaintiff's Memorandum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10–1 at 17, 3/10/11).

### I. Motion for Preliminary Injunction

#### A. Substantial Likelihood of Success on the Merits

In the instant case, the plaintiff alleges that the federal Medicaid Act requires the defendant to provide the plaintiff, a Medicaid recipient under the age of 21, with ABA therapy as prescribed by the plaintiff's physician.[8] *See* Plaintiff's Memoran-

---

**7.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

**8.** The Motion to Amend the Complaint and Add Additional Parties (DE# 40, 7/1/11) seeks to broaden the prayer for relief as follows: "[t]he subsection currently requests that the

dum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10-1 at 1-2, 3/10/11). Count I of the plaintiff's complaint alleges that:

> [The d]efendant's rule governing coverage of behavioral health services ... violates the [Early Periodic Screening, Diagnosis and Treatment] provisions of the federal Medicaid statute at 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B) and; 42 U.S.C. § 1396d(r)(5). This violation entitles Plaintiff to relief under 42 U.S.C. § 1983.

*See* Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 41, 2/28/11).

The plaintiff argues that ABA therapy is a medical service covered under §§ 1396d(a)(6) and 1396d(a)(13) of the Medicaid Act and is necessary to correct or ameliorate K.G.'s condition. Plaintiff's Memorandum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10-1 at 10-12, 3/10/11). Thus, the defendant's rule, Fla. Admin. Code R. 59G-4.050, excluding ABA from Medicaid coverage for autistic children violates the federal Medicaid Act. *Id.* at 10. The defendant does not dispute that ABA therapy is excluded from Florida's Medicaid coverage pursuant to Fla. Admin. Code R. 59G-4.050. Instead, the defendant argues that ABA therapy is not a medical service covered under § 1396d(a) of the Medicaid Act. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to

Plaintiff's Motion for Preliminary Injunction (DE# 17 at 15, 3/28/11). This argument is addressed in the following subsection.

The defendant further argues that ABA therapy is experimental in nature and the state cannot be compelled to provide treatment for experimental services. *See* Defendant's Response in Opposition to Plaintiff's Motion for an Expedited Ruling on Motion for Preliminary Injunction (DE# 39 at 2, 6/30/11). The defendant also argues that the scope of the Court's review is limited. *Id.* at 8. According to the defendant, the Court's role in this matter is limited to a review of the defendant's decision for reasonableness. The defendant maintains that the question before the Court is not whether ABA is experimental but whether the defendant's determination that ABA is experimental was reasonable. *Id.* at 8 (citing *Miller by Miller v. Whitburn*, 10 F.3d 1315, 1321 (7th Cir.1993) and *Rush v. Parham*, 625 F.2d 1150, 1157 (5th Cir.1980)).

In *Miller*, the district court erroneously concluded that it did not have the discretion to review the state's determination that liver-bowel transplants were experimental. *Miller*, 10 F.3d at 1318. The Seventh Circuit reversed and found that "a federal court may review (1) the [state]'s definition of 'experimental' " to ensure that it reasonably comports with [the Court's] explanation of that term, which is ... consistent with current medical opinion and (2) the question [of] whether the [state]

---

Court '[e]nsure that Plaintiff receives Medicaid coverage for **ABA therapy consistent with the recommendations of his treating physician.'** .... Plaintiff proposes changing this subsection to pray instead that the Court '[e]nsure that Plaintiffs receive Medicaid coverage for **medically necessary prescribed behavioral health services, including ABA.'**" Plaintiff's Memorandum in Support of Motion to Amend Complaint and Add New Plaintiffs (DE# 40-1 at 1 n. 2, 7/1/11) (emphasis add-

ed). The motion to amend is pending before the Court and the plaintiff has not amended his requested relief in the instant motion for preliminary injunction. In fact, at the July 18, 2011 hearing, the plaintiff advised the undersigned that the Court did not need to consider the amended complaint in addressing the instant motion for a preliminary injunction. Therefore, the undersigned will proceed with the relief requested in the instant motion for preliminary injunction.

reasonably applied this definition of experimental to the liver-bowel transplantation at issue here. *Id.* at 1320. The appellate court then noted that: "the [state] has significant discretion to decide which treatments to cover. Accordingly, the district court may decide only whether the [the state's] determination that the liver-bowel transplant procedure is experimental is reasonable." *Id.* at 1321 (citing *Rush,* 625 F.2d at 1157). In *Rush,* the former Fifth Circuit observed that:

> The clearest articulation of the considerations that go into determining whether a particular service is experimental is found in a letter Medicare uses to explain to its clients and providers why a service is ineligible for reimbursement: In making such a decision (whether to provide payment for a particular service), **a basic consideration is whether the service has come to be generally accepted by the professional medical community as an effective and proven treatment for the condition for which it is being used. If it is, Medicare may make payment.** On the other hand, if the service or treatment is not yet generally accepted, is rarely used, novel or relatively unknown, then authoritative evidence must be obtained that it is safe and effective before Medicaid may make payment.

*Rush,* 625 F.2d at 1156 n. 11 (emphasis added) (quoting Enclosure # 2 to Intermediary Letters Nos. 77–4 & 77–5, (1976 Transfer Binder) Medicare & Medicaid Guide (CCH) P 28,152 (1976)).

The State of Florida's definition of "experimental" can be found in Fla. Admin. Code R. 59G–1.010(84). The state's definition is as follows:

> (84) "Experimental" or "Experimental and clinically unproven" or "Investigational" as related to drugs, devices, medical treatments or procedures means:

> (a)1. The drug or device cannot be lawfully marketed without approval of the U.S. Food and Drug Administration (FDA) and approval for marketing has not been given at the time the drug or device is furnished; or

> 2. Reliable evidence shows that the drug, device or medical treatment or procedure is the subject of on-going phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis; or

> 3. **Reliable evidence shows that the consensus among experts regarding the drug, device, or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, toxicity, safety, or efficacy as compared with the standard means of treatment or diagnosis.** The drug or device is used for a purpose that is not approved by the FDA.

> (b) Reliable evidence shall mean only published reports and articles in the authoritative medical and scientific literature; the written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same drug, device or medical treatment or procedure; or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device or medical treatment or procedure.

Fla. Admin. Code R. 59G–1.010(84) (emphasis added). Here, Dr. Mulick's sworn declaration states that "[i]t is **generally well accepted among psychologists and physicians with expertise in treating au-**

**tism** that a sufficient amount of ABA is (for most children) medically necessary to ameliorate the problematic aspects of autism . . . ." Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶ 20, 3/10/11) (emphasis added). Thus, the defendant has failed to show that their assertion that ABA therapy is "experimental" is reasonable under the State's own definition.[9]

The defendant also argues that the K.G. cannot show a substantial likelihood of success on the merits because he has failed to allege that his autism was discovered through an "EPSDT" screening. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17 at 17, 3/28/11). The Court does not need to devote much time to this argument. As the plaintiff notes:

Shortly after Congress passed the EPSDT amendments, the federal Agency responsible for administering Medicaid advised states that inter-periodic screens include any visit to a physician (including family-initiated visits) to determine if the child has a condition requiring further assessment, diagnosis or treatment. *See* Ex. E at 1–2, Memorandum from Christine Nye, Director, Health Care Financing Administration Medicaid Bureau (Apr. 12, 1991). The Agency further advised that states are

required to cover *any* medically necessary treatment prescribed for a child during a visit. *See* Ex. E at 2.

Plaintiff's Reply in Support of Motion for Preliminary Injunction (DE# 21 at 7, 4/7/11) (footnote omitted) (emphasis in original). "This is exactly the type of screen K.G. had." *Id.* at 7 n. 7. (citing Declaration of Iliana Garrido (DE# 10–5 at ¶¶ 4–5, 3/10/11)).

Lastly, the defendant makes the argument that because Medicaid is a Spending Clause statute, the State of Florida must have notice that it must provide coverage for ABA therapy to Medicaid recipients.[10] This argument was raised at the July 18, 2011 hearing and was noticeably absent from the defendant's responses to the motion for preliminary injunction and the motion for expedited ruling. As such, the plaintiff did not have a fair opportunity to respond. Other than case law stating general propositions concerning the Spending Clause, the defendant has cited no legal support for the proposition that requiring the State to cover ABA therapy under the EPSDT program would violate the Spending Clause. The undersigned's independent legal research has revealed no cases addressing this argument as it pertains to ABA therapy or behavioral health services. Given this lack of authority, the defendant's argument is unpersuasive.

---

9. Of note, the State requires private insurers to provide coverage for ABA therapy. *See* Fla. Stat. § 627.6686(3)(b) (stating that a health insurance plan issued or renewed after April 1, 2009 shall provide coverage for "the [t]reatment of autism spectrum disorder through speech therapy, occupational therapy, physical therapy, and **applied behavior analysis.** Applied behavior analysis services shall be provided by an individual certified pursuant to s. 393.17 or an individual licensed under chapter 490 or chapter 491.") (emphasis added) and § 641.31098(3)(b) (requiring health maintenance contracts issued on or after April 1, 2009 to provide coverage for ABA).

10. "There are four 'general restrictions' on Congress's spending power: (1) the exercise of spending power must be for the general welfare; (2) **the conditions must be stated clearly and unambiguously;** (3) the conditions must bear a relationship to the purpose of the program; and (4) the conditions imposed may . . . not require states 'to engage in activities that would themselves be unconstitutional.'" *Florida ex rel. McCollum v. U.S. Dept. of Health and Human Services,* 716 F.Supp.2d 1120, 1157 (N.D.Fla.2010) (emphasis added).

#### i. Whether ABA Therapy Falls under § 1396d(a) of the Medicaid Act

The plaintiff must show that ABA therapy falls under one of the categories enumerated in § 1396d(a)(1)-(29). The plaintiff argues that ABA therapy falls under §§ 1396d(a)(6) and 1396d(a)(13) of the Medicaid Act and relies on *Parents League for Effective Autism Services v. Jones–Kelley,* 565 F.Supp.2d 905, 918, *aff'd,* 339 Fed.Appx. 542, 544 (6th Cir.2009) and *Chisholm v. Hood,* 133 F.Supp.2d 894, 897–98 (E.D.La.2001). In *Parents League,* the district court concluded that ABA therapy fell under § 1396d(a)(13) of the Medicaid Act because this subsection "has been interpreted by other courts to mean if a 'licensed clinician finds a particular service to be medically necessary to help a child improve his or her functional level, this service must be paid for by a state's Medicaid plan pursuant to the EPSDT mandate.'" *Parents League,* 565 F.Supp.2d at 915. In *Chisholm,* the district court concluded that psychological and behavioral management services were included in §§ 1396d(a)(6) and 1396d(a)(13) of the Medicaid Act. *Chisholm,* 133 F.Supp.2d at 897–98.

> Section 1396d(a)(13) provides for:
>
> other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

42 U.S. § 1396d(a)(13). The defendant argues that ABA therapy is not included in subsection 13 because it is not specifically listed. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17 at 15, 3/28/11). This argument is unpersuasive. Subsection 13 does not list *any* medical services by name. It provides a description of the types of medical services that would be covered. 42 U.S. § 1396d(a)(13). A medical service does not need to be listed by name in order to fall under one of the enumerated categories in § 1396d(a). *See, e.g., S.D. ex rel. Dickson v. Hood,* 391 F.3d 581, 597 (5th Cir.2004) (disposable incontinence underwear fell under the category of "home health care services" in § 1396d(a)(7)).

The defendant also argues that § 1396d(a)(13) does not include ABA therapy because ABA therapy is habilitative and not rehabilitative. As noted in *Parents League:*

> The term "rehabilitative services" is defined in the regulations implementing the federal Medicaid law as:
>
>> Rehabilitative services, except as otherwise provided under this subpart, includes any medical or remedial services recommended by a physician or other licensed practitioner of the healing arts, within the scope of his practice under State law, **for maximum reduction of physical or mental disability and restoration of a recipient to his best possible functional level.** 42 C.F.R. § 440.130(d).

*Parents League,* 565 F.Supp.2d at 915 (emphasis added). The defendant's argument is countered by the sworn declarations of Dr. Elza Vasconcellos, the plaintiff's treating neurologist and Dr. James A. Mulick, an expert on autism. Dr. Vasconcellos states that ABA therapy "will provide [K.G.] with the greatest opportunity to reduce his disability and **restore** him to his best possible functional level." Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 16, 3/10/11) (emphasis added). Similarly, Dr. Mulick opines that "in-

tensive behavioral intervention can significantly increase the practical functioning of children with autism and **is critical in helping restore the child to his best possible functional level.**" *See* Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶ 19, 3/10/11) (emphasis added). Based on the evidence, the undersigned concludes that ABA therapy is rehabilitative.

ABA therapy falls under § 1396d(a)(13) of the Medicaid Act. As noted in *Parents League*, § 1396d(a)(13) "has been interpreted by other courts to mean if a 'licensed clinician finds a particular service to be medically necessary to help a child improve his or her functional level, this service must be paid for by a state's Medicaid plan pursuant to the EPSDT mandate.'" *Parents League*, 565 F.Supp.2d at 915. Here, Dr. Vasconcellos, a neurologist, has determined that ABA therapy is medically necessary to improve K.G.'s functional level. *See* Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶¶ 9–16, 3/10/11).

Having determined that ABA therapy falls under § 1396d(a)(13) of the Medicaid Act, the undersigned does not need to determine whether ABA therapy also falls under § 1396d(a)(6). A medical service need only fall under one of the categories enumerated in § 1396d(a) and be necessary to "correct or ameliorate" the child's condition to be mandatory under the EPSDT program. *See Benson*, 703 F.Supp.2d at 1269. The undersigned will now address whether ABA therapy is necessary to correct or ameliorate K.G.'s condition.

### ii. Whether ABA Therapy Is Necessary to Correct or Ameliorate K.G.'s Condition

The plaintiff has also made a strong showing that ABA therapy is necessary to correct or ameliorate K.G.'s condition. The plaintiff has presented the Court with the declarations of Dr. Elza Vasconcellos, the plaintiff's treating neurologist, and Dr. James A. Mulick, an expert on autism. The defendant, by contrast, has submitted articles which, according to the defendant, question the effectiveness of ABA therapy. The undersigned gives greater weight to the detailed sworn declarations of Dr. Vasconcellos and Dr. Mulick over the articles cited by the defendant. Dr. Vasconcellos opines that "providing K[.G.] with a sufficient amount of ABA [therapy] presents the best **possible opportunity for reducing his problematic behaviors** .…" Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 9, 3/10/11) (emphasis added). Dr. Vasconcellos further opines that ABA therapy "will provide [K.G.] with **the greatest opportunity to reduce his disability** and restore him to his best possible functional level." *Id.* at ¶ 16 (emphasis added). The undersigned also credits Dr. Mulick's statement that "[i]t is generally well accepted among psychologists and physicians with expertise in treating autism that **a sufficient amount of ABA is (for most children) medically necessary to ameliorate the problematic aspects of autism** .…" Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶ 20, 3/10/11) (emphasis added). Based on the evidence, the undersigned concludes that ABA therapy is necessary to correct or ameliorate K.G.'s condition.

The plaintiff has made a clear showing of likelihood of success on the merits that the EPSDT-mandated services under the federal Medicaid law require the defendant to provide coverage for ABA therapy for K.G. Therefore, Fla. Admin. Code R. 59G–4.050 excluding ABA coverage for qualified Medicaid recipient under the age of 21 violates the federal Medicaid Act. Having determined that the plaintiff has met his burden of making a clear showing of substantial likelihood of success on the merits, the undersigned will now address the re-

maining three factors for obtaining a mandatory preliminary injunction.

## B. Irreparable Injury Absent Injunctive Relief

To establish an irreparable injury, the plaintiff must show that he will suffer an injury that cannot be adequately compensated if, at some later point in time, he prevails on the merits. *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir.1983). For purposes of a preliminary injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991) (citation omitted). The plaintiff argues that he "is being denied an essential Medicaid service in violation of federal Medicaid law and is at risk of irreparable injury unless this Court grants the requested relief." Plaintiff's Memorandum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10–1 at 15, 3/10/11). The defendant counters that the plaintiff cannot show irreparable harm because "ABA has never been proven effective in a large, multi-state, randomized controlled trial" and has not been shown to work for children the plaintiff's age. Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17 at 17–18, 3/28/11).

The plaintiff has met his burden of showing a clear irreparable injury. The undersigned credits Dr. Vasconcellos declaration that K.G. exhibits "extreme irritability, hyperactivity, incessant screaming, frequent tantrums, and inappropriate aggression towards himself and others" and that if K.G. does not receive the required ABA therapy, K.G. "could lose the ability to communicate altogether" and it will "greatly increase his risk of institutionalization." Declaration of Elza Vasconcellos, M.D. (DE# 10–4 at ¶¶ 6, 15, 3/10/11). The

undersigned is also persuaded by Dr. James A. Mulick's sworn declaration that "ABA is a highly effective treatment in a high percentage of cases" and that "[e]ven if not provided at an early age, intensive behavioral intervention can significantly increase the practical functioning of children with autism and is critical in helping restore the child to his best possible functional level. This is especially true with respect to the moderation of self-destructive, aggressive, and other kinds of socially undesirable or dangerous behavior." *See* Declaration of James A. Mulick, Ph.D. (DE# 10–3 at ¶¶ 16, 19, 3/10/11). The undersigned also credits Dr. Mulick's statements that "[i]t is generally well accepted among psychologists and physicians with expertise in treating autism that a sufficient amount of ABA is (for most children) medically necessary to ameliorate the problematic aspects of autism ...." and that "[i]f [an autistic child] does not receive sufficient behavioral health services, the child is at grave risk of remaining unnecessarily disabled for the remainder of the child's natural life span. There is also a risk that an untreated person could become even more disabled through injury or loss of skills previously demonstrated." *Id.* at ¶ 20, 22. Based on the evidence presented, the plaintiff has established that an irreparable injury will occur if the preliminary injunction is not issued in the instant case. *See Kai v. Ross*, 336 F.3d 650, 656 (8th Cir.2003) (stating that "[a]s the [d]istrict [c]ourt observed, the danger to plaintiffs' health, and perhaps even their lives, gives them a strong argument of irreparable injury.").

## C. Balancing of Harms

The balancing of harms favors the issuance of a preliminary injunction. The plaintiff will suffer real and substantial injury if this Court does not issue a preliminary injunction. The plaintiff has

demonstrated the serious adverse consequences he would suffer if he does not receive ABA therapy. *See* Declaration of Elza Vasconcellos, M.D. (DE# 10-4 at ¶¶ 6, 15, 3/10/11), discussed *supra*. The harm to the defendant in granting the preliminary relief sought does not outweigh the harm to K.G. The defendant argues that the cost to the state for providing ABA therapy to 20,000 autistic children will be between $660 million and $1 billion per year. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17 at 18, 3/28/11).

In analyzing this factor, the Court should ascertain the harm that will *actually* flow from issuing the preliminary injunction. The plaintiff is not asking that the preliminary injunction apply to all 20,000 autistic children in Florida. The plaintiff's request for injunctive relief is limited to K.G. If the Court were to grant the requested preliminary injunction, the defendant would only be providing coverage for ABA therapy to K.G. According to the defendant's own estimates, the cost of providing ABA therapy to a single autistic child ranges from $33,000 to $50,000 per year. *See* Defendant's Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (DE# 17 at 18, 3/28/11). In analyzing the fiscal harm to the defendant, the Court should also take into consideration the duration of the injunction. This case is presently scheduled for the two-week trial period commencing on March 12, 2012. *See* Scheduling Order (DE# 30 at 1, 6/9/11). It is unlikely that this litigation will last a full year. Thus, the fiscal harm to the defendant is more in the range of $22,000 to $33,333.33 [11] for the approximately eight months the injunction would be in place. This range assumes that the defendant's estimates already exclude the amount that will be reimbursed to the State by the federal government.[12] Finally, if it turns out that the defendant prevails in the instant case, K.G.'s ABA therapy can be immediately terminated. In sum, the fiscal harm to the defendant that would result from the issuance of a preliminary injunction requiring the defendant to provide coverage for K.G.'s ABA therapy is significantly outweighed by the real and substantial harm K.G. would suffer if he does not immediately receive ABA therapy.

**D. Public Interest**

 The public interest weighs in favor of granting injunctive relief. In assessing the public interest, courts may look to congressional intent. *See Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 788 (11th Cir.1984) (stating that "Congressional intent and statutory purpose can be taken as a statement of public interest."). The stated purpose of the Medicaid program is to "enabl[e] each state ... to furnish ... medical assistance [to individuals] whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1(1). The

---

**11.** This amount was calculated by dividing the $33,000 and $50,000 figures provided by the defendant by 12 months and multiplying those figures by the likely eight month duration of the injunction.

**12.** The federal government is required to reimburse states for a substantial portion of the states' Medicaid expenditures. 42 U.S.C. §§ 1396b(a), 1396d(b). As of July 1, 2011, the federal reimbursement rate for the State of Florida is 54%. *See* Plaintiff's Memorandum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10-1 at 17–18, 3/10/11) (citing 74 Fed. Reg. 38, 630–38, 633 (Aug. 4, 2009)). It is unclear whether the defendant's estimate includes the amount that the state would receive from the federal government as reimbursement.

issuance of an injunction in the instant case would provide K.G. with necessary medical services,[13] furthering the stated purpose of the Medicaid program. The defendant's argument—that requiring Florida to provide Medicaid funding for ABA therapy would only stifle rigorous scientific research into treatments and remedies for autism that actually work— strains credulity. It is highly improbable that the millions of dollars poured in autism research would suddenly stop because the Court has issued a mandatory preliminary injunction requiring the defendant to provide coverage for ABA therapy to K.G. pending the outcome of this litigation. In sum, the public interest clearly supports the issuance of an injunction.

## II. Plaintiff's Request for Waiver of the Bond Requirement

 In the instant motion, the plaintiff requests that the Court waive the requirement that he post a bond, pursuant to FED. R. CIV. P. 65(c). *See* Plaintiff's Memorandum of Law in Support of First Amended Motion for Preliminary Injunction (DE# 10–1 at 17–18, 3/10/11). The defendant does not appear to oppose this relief as she did not address the issue either in her responses or at oral argument. "The amount of an injunction bond is within the sound discretion of the district court." *Carillon Importers, Ltd. v. Frank Pesce International Group*, 112 F.3d 1125, 1127 (11th Cir.1997). The undisputed evidence shows that the plaintiff is indigent. *See* Declaration of Iliana Garrido (DE# 10–5 at ¶ 20, 3/10/11) (attesting that the family has difficulty paying for basic necessities). Because of the plaintiff's indigency, and in the absence of any opposition by the defendant, it is recommended that the requirement that the

plaintiff post a bond be waived. *See Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir.1991) (upholding waiver of the bond requirement where suit was brought to enforce compliance with the Medicaid Act).

## CONCLUSION

The undersigned finds that the plaintiff has satisfied the heightened burden of demonstrating his entitlement to mandatory preliminary injunctive relief with clear factual and legal proof. The plaintiff has shown significant and substantial likelihood of succeeding on the merits of his claim that the defendant's refusal to cover ABA therapy for which the plaintiff is financially and medically eligible violates the EPSDT program. The plaintiff will suffer irreparable injury unless the preliminary mandatory injunction is issued because the plaintiff is at imminent risk of becoming permanently disabled if he does not receive ABA therapy in the immediate future. The threatened injury to the plaintiff outweighs the fiscal injury that the preliminary injunction may cause the defendant and entering the requested preliminary injunction would not disserve the public interest. It is further recommended that the bond requirement be waived.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Plaintiff's First Amended Motion for Preliminary Injunction (DE# 10, 3/10/11) be **GRANTED** and that the Court issue a mandatory preliminary requiring the defendant to provide coverage for K.G.'s ABA therapy as prescribed by his physician. It is further recommended that the

---

**13.** "[W]ithout the provision of **medically necessary ABA** [therapy], K.[G.] could lose the ability to communicate altogether." Declara-tion of Elza Vasconcellos, M.D. (DE# 10–4 at ¶ 15) (emphasis added).

requirement of a bond be waived in the instant case.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 22nd day of July, 2011.